EDWARD BLAKE & another *vs*. ISABEL PEGRAM & others.

EDWARD BLAKE, guardian, *vs*. ISABEL PEGRAM & others.

Upon the settlement of an account by a trustee or a guardian, his former accounts may be opened to the same extent as in the settlement of accounts of executors or administrators under the Gen. Sts. *c*. 98, § 12; including former accounts settled by him jointly with an associate in his trust, since deceased, and for whose receipts or misappropriations he ought not to be held responsible.

The assent of a guardian *ad litem* of a minor *cestui que trust* to an account rendered by the trustee is no bar to a revision and correction of the account when reopened upon the settlement of a subsequent account by the trustee. So also as to the settlement of accounts by a guardian.

A trustee or a guardian, in settling an account, is liable to be examined as a witness in reference to any of his former accounts which are opened.

A testator devised to trustees, as part of the trust fund, his interest as a tenant in common with A. and B. in one parcel of real estate; and to his widow another parcel for her life, with power to sell the fee. The widow, through an agent, negotiated a sale of the second parcel to A., and as a part of the transaction the trustees bought the interests of A. and B. in the first parcel and leased that whole parcel to B. It appearing that the agent who negotiated the transaction was paid full commissions for it out of the trust fund, *Held*, that the trustees were not entitled to the allowance of special charges for their services in it, additional to their general charge of commissions.

When, in settling an account of a trustee or a guardian, his former accounts are reopened, special charges therein for definite particular services are not to be disallowed merely because additional to general charges of commissions; nor without some proof that they are excessive, or that the services were not such as to justify any additional charge.

A person who is both trustee and guardian is not entitled to full compensation in each capacity for the same service.

APPEALS from decrees of the probate court for Suffolk, which purported to have been made *pro formâ*, accepting and confirming accounts rendered by Blake and John A. Loring as trustees under the will of Fitzhenry Homer, and by Blake as guardian, under said will, of Isabel, the testator's daughter, since become, by marriage, Mrs. Pegram. Motions filed by the appellees, to dismiss the appeals so far as they related to previous accounts settled in the probate court, were denied, reserving to the appellees the right to avail themselves of their objections to such denial at any future stage of the appeals; and the causes were committed to a master, whose report, after a hearing, was accepted by *Ames*, J., " reserving to the appellants all questions of law arising upon all facts and evidence reported,"

and the causes to be " reported, upon said report and said will, to the full court, for further action." The following are portions of the report of the master :

" Fitzhenry Homer died June 1, 1856, leaving a widow, a daughter, Josephine, then the wife of Henry Bedlow, and a daughter, Isabel, now the wife of John C. Pegram. By his will and two several codicils, he gave the greater part of his estate to his widow, Edward Codman, and Edward Blake, to hold on certain trusts; appointed his widow and Blake guardians of Isabel, and his widow executrix. These appointees entered upon their respective trusts. The widow died November 15, 1856, leaving a will by which she gave to her daughter Isabel all her property, except fifty dollars. Codman and Blake continued to act as trustees till the death of the former, January 19, 1862. In 1863, John A. Loring was appointed in the trust with Blake. Blake was the sole guardian of Isabel, after her mother's death, till she attained her majority November 4, 1864. Codman and Blake rendered an account as trustees, which was allowed by the probate court March 15, 1858. Blake, sole surviving trustee, rendered an account, which was allowed April 27, 1863. Blake and Loring rendered an account as trustees, which was allowed January 22, 1866. Blake, as guardian, rendered his first account as guardian, which was allowed March 15, 1858, and his second and final account, which was allowed January 22, 1866. The last account of the trustees, and the last account of the guardian, were allowed without examination and *pro formâ;* and appeals were duly taken. Each successive account brings forward the balance appearing in the next preceding account, and the appellants claim the right to have all the accounts examined and the errors, if any, corrected. This right is denied by the guardian and the trustees. It was proved that, on the first accounts of guardian and trustees, William Minot, Jr., was, on his own petition, appointed guardian *ad litem* of Isabel; and that he appeared and put in an answer. It was also proved that there was an examination of both accounts; that the guardian *ad litem* asked the court to have the accounts corrected in one particular; that the correction was ordered by the court; and

that an appeal was taken from this. order by Bedlow, and the order was reversed by the supreme court of probate. It was also proved that Blake, November 28, 1864, just before filing the two last accounts, addressed a letter to Mrs. Pegram, in which he expressed his willingness to have all his accounts investigated since the death of Mr. Homer.

" The trustees have charged and have been allowed a commission of five per cent. on all income derived from the estate, except during the year in which Blake was sole trustee, when, in accordance with an arrangement with Bedlow, the commission was only four per cent.

" At the time of his death, Mr. Homer was the owner of a house on Beacon Street in Boston, and of one quarter of an estate on Howard Street, called the Haskins estate. Benjamin B. Muzzey was the owner of one half, and Franklin Evans of the remaining quarter, of this estate. By the will of her husband, Mrs. Homer took an estate for her life in the house on Beacon Street, with a power to sell in fee. She employed Franklin Evans, and gave him a power of attorney to negotiate a sale of the house. He ascertained that he could dispose of the house more advantageously by taking in payment a part or the whole of Muzzey's interest in the Haskins estate. As in making such bargain Evans might have an interest adverse to hers, Mrs. Homer employed Uriel Crocker to act for her. It was finally agreed that Muzzey should take the house at $70,000 ; that the trustees should take the half interest of Muzzey and the quarter interest of Evans in the Haskins estate, at the rate of $133,000 for the whole ; and that Evans would take a lease of the Haskins estate for the term of twenty years, the rent to be equal to eight per cent. on $133,000, payable semiannually, and the lessee to pay the taxes and insurance. This agreement was put in writing, and was signed by Mrs. Homer, Evans, and the trustees, Blake and Codman. The sale of the house to Muzzey, the purchase of the Haskins estate, and the lease, were parts of one transaction. To what extent the several parties to the contract participated in the negotiation was not proved. The deeds were not passed till after the decease of Mrs. Homer. Evans took a

small portion of the Haskins estate in part payment for his quarter interest. He charged a commission of one per cent. on $70,000, and, for Mrs. Homer, paid Crocker $500 as compensation for his services.

" The trustees, in their first account, charged a commission of one per cent. on the $70,000, and on $99,750, which was the valuation placed on the three quarters of the Haskins estate. They also charged a commission of one per cent. on $4000, which was the valuation of the small portion of the Haskins estate taken by Evans.

" They charged, for effecting the lease, a commission of $318.20; for personal services of Blake, about the sale of the Beacon Street estate, $300 (these being professional services); for his professional services in procuring a resolve of the legislature to authorize the sale of the house, and in attending as counsel a hearing before William J. Hubbard, to whom was submitted the question of interest growing out of the trade with Muzzey, $200; and a further sum of $1000 for their services about the legislative resolve, negotiations with James Lawrence and Sidney Bartlett, and commission on money received and paid out about sale of house and purchase of Haskins's estate.

" There was no evidence showing what part was taken or what time was spent by the trustees in the sale of the house, the purchase of the Haskins estate, and the lease thereof to Evans, and no evidence bearing on the right and propriety of these charges, except that stated. The appellants objected that these charges of commission were on their face unauthorized and erroneous; that the evidence proved that the house was not sold by the trustees, but was sold by Mrs. Homer in her lifetime. They contended that the final charge of $1000 was on its face erroneous, as covering the same subject matter as the previous charges; and that, upon the evidence, Crocker was employed and paid for these services. Blake denied the right of the appellants to question the propriety of these charges, as they appeared in the account which was allowed by the probate court, and were adjudged to be right by that court, and the decree was not appealed from.

" The trustees in their first account charged $200 for exam ining, auditing and settling accounts of Nancy B. Homer, exec- utrix of her husband's will; $150 for their services about claim of Evans in reference to estate on Howard Street, submitting same to arbitration and attending at the hearing; $125 for sun- dry professional services of Blake about hearing before referee of the $1500 claim, attending probate court upon account of Evans, administrator, and petition to have stock transferred and balance paid over; $100 for services about land at corner of Washing- ton and Worcester Streets. These charges the appellants con- tended were unreasonable and should have been disallowed; and more particularly, because the trustees had no right to charge for specific services, as they were paid by their commis- sions. There was no evidence showing the necessity of these services, or the reasonableness of them. Blake, when testifying and asked to explain these charges, and to state what the ser- vices were, declined to do so, upon the ground that they had been allowed on examination by the probate court, and that the decree of that court had not been appealed from.

" The guardian has charged a commission of five per cent. on the income received. As the trustees have charged a commis- sion of five per cent. on nearly all the same money; as he was one of two trustees, and for a portion of the time sole trustee; as he only retained as guardian the money which he had re- ceived as trustee; and as he used his ward's money, and made no investments for her; the appellants object to this charge as excessive. It appeared that, though the guardian had not the personal charge and care of his ward, he was consulted and ad- vised with in all important matters."

The case otherwise, so far as is material, is stated in the opinion.

*C. B. Goodrich & E. Blake,* for the appellees.

*C. F. Choate,* for the appellants.

WELLS, J. Under the provision of Gen. Sts. *c.* 117, § 14 giving to appeals from the probate court the same rights, as to hearing and determination, as belong to cases in equity, all ques- tions of law or fact may be brought before the full court for

argument and final decision. Such hearings, however, can be of but very little practical advantage, unless the previous investigations for which the law provides are so conducted as to present in the most precise and definite form practicable all questions which are intended for discussion here. It is not in accordance with the purpose manifested in the organization of the two courts, and their relations to each other, that the original investigation of questions which may arise should be transferred at once to this court by a mere *pro formâ* decree in the probate court. The statute provision, *c.* 117, § 10, requiring that the appellant shall file his reasons of appeal, indicates an adjudication in the probate court upon the objections made or questions raised there, and a statement of the grounds upon which the appellant proposes to seek a revision of that adjudication. The examination of the accounts of administrators, guardians and trustees belongs peculiarly to the probate court; and their transmission to this court without such examination there is especially objectionable.

In these cases, the objections to the accounts, as originally filed, are made to serve for reasons of appeal. They are somewhat general; and there having been no adjudication upon the several items, the entire accounts must be examined and stated here. For this purpose the cases have been committed to a master, with directions to state the items of the accounts, from the allowance of which the appeals were taken, and such facts as might be deemed material to determine the points in controversy; and also to report as to any errors in previous accounts settled in the probate court in the same cases. The master reports that "the parties dispense with a statement of accounts, and desire the case to be submitted on the evidence and claims as recited."

Upon this report, we are unable to make any final disposition of the cases; and the accounts must be recommitted for a more specific statement of the facts touching the points in dispute, and of the items in the several accounts in respect of which objections are made or errors alleged. There are several questions, however, which are sufficiently presented upon the report

as it stands, the decision of which may facilitate the further disposition of the cases.

The accountant contended that his former accounts, settled in the probate court, were not open to investigation in the settlement of the final accounts ; and upon that assumption refused to answer inquiries in relation to the items of those accounts.

By Rev. Sts. *c.* 67, § 10, (Gen. Sts. *c.* 98, § 12,) it is expressly provided that, upon the settlement of any account by an executor or administrator, " all his former accounts may be so far opened as to correct any mistake or error therein ; except that any matter in dispute between two parties, which had been previously heard and determined by the court, shall not be again brought in question by either of the same parties without leave of the court." We are of opinion that the same rule is to be applied to guardians and trustees. Both are included in the provisions of Gen. Sts. *c.* 101, § 7, in regard to the conclusiveness of final accounts ; and there is equal reason, if not stronger, for applying the rule to guardians, as to executors and administrators. It was acted upon by the courts before its adoption in the Revised Statutes, and was applied alike to executors, administrators, guardians and trustees. *Stearns* v. *Stearns*, 1 Pick. 157. *Stetson* v. *Bass*, 9 Pick. 27. *Longley* v. *Hall*, 11 Pick. 120. *Boynton* v. *Dyer*, 18 Pick. 1.

The fact that a guardian *ad litem* was appointed in order to give validity to the former decree does not protect the accounts from revision. The right to have errors corrected is recognized, even when the party interested was under no disability. And the assent of such a party to the account as settled in the probate court, or of a guardian *ad litem* in his behalf, does not preclude him from afterwards insisting upon the correction of errors therein, or from establishing the fact of the existence of such errors by the ordinary modes of proof and the examination of the accountant. Whatever may be the effect of such an assent, 't is not necessarily conclusive. *Boynton* v. *Dyer*, 18 Pick. 1.

It does not appear that any of the points now controverted, in relation to the former accounts, were put in issue, or so submitted to the court, at the time those accounts were settled, as

to give to the matter thereof the force or character of *res adju-dicata*. *Saxton* v. *Chamberlain*, 6 Pick. 422. *Field* v. *Hitch-cock*, 14 Pick. 405. *Wiggin* v. *Swett*, 6 Met. 194. The accounts were therefore properly open to examination for the purpose of showing errors or omissions therein; to surcharge or to falsify. It follows that the accountant was bound to answer inquiries in regard to those accounts, and his management of the trust property; and must submit himself to examination, if required, in the further hearings before the master. *Saxton* v. *Chamberlain*, 6 Pick. 422. *Wade* v. *Lobdell*, 4 Cush. 510.

The fact that some of the errors sought to be corrected consist of overcharges in accounts settled by this accountant jointly with a former cotrustee who is since deceased, and for whose receipts or misappropriations he ought not to be held responsible, does not alter the question of the right to open and revise the account. *Wiggin* v. *Swett*, 6 Met. 194.

The examination of the accountant may modify the questions presented as to many of the alleged omissions and errors in the accounts; and especially as to his investments, and his use of or neglect to invest the funds in his hands. There is no occasion at this time to express any opinion upon these questions, nor upon charges for compensation for alleged actual services, the character and extent of which were not disclosed, or not stated in the report. But there are some charges in the accounts which, upon the report as it now stands, are clearly excessive, and should be corrected by suitable corresponding credits in the final account.

1. The charge of one per cent. as a commission upon the valuation of the several interests of the parties to an exchange of estates negotiated during the lifetime of Mrs. Homer, by agents employed by her, and who received full commissions for the transaction out of the same fund, cannot be justified. This, upon valuations amounting to $173,750, would be $1,737.50.

2. The charge of $318.20 for effecting a lease, which was part of the same transaction, seems to stand in the same position.

3. The charge of $1000 for services in relation to the same matter, " and commission on money received and paid out about sale of house and purchase of Haskins's estate," is objectionable in several respects, both of form and substance. So far as it stands in the same position with the charges already referred to, it should be rejected. So far as it stands as compensation for actual services rendered, as it is indefinite and apparently for the same services as the charges of $300 and $200 mentioned in the same clause of the report, it should be made definite and explained so that it may appear that necessary and proper services were rendered, commensurate with the charges made therefor.

4. The charges for particular services are not to be disallowed without some proof that they are excessive, or that the services were not such as justified any charge beyond the general charge of commissions. The appellants, who seek to correct errors in former accounts, must not only point out the alleged errors, but must show that they are such. For this purpose, they are entitled to the explanations and answers of the accountant. .

5. The commission of five per cent. upon income received as guardian, in addition to a like sum charged upon the same money as received in the capacity of trustee, is manifestly excessive. Such a commission upon income received and paid over is allowable only as a convenient measure of compensation for services supposed to have been actually rendered. It implies something more than mere nominal service and the responsibility of the trust. There is no rule of law and no principle of right by which such commissions are to be charged or allowed without regard to the rendition of actual services therefor. When the same person is both guardian and trustee, it would be a reproach to the law, and to the courts charged with the protection of such trusts, to allow him to charge full compensation in both capacities for the same service.

The other items require a more particular examination and report before they can be satisfactorily disposed of. The cases are accordingly *Recommitted to the master.*