Raymond T. King, administrator *de bonis non* with the will annexed, *vs.* Gertrude Otis Grace & another.

Hampden.   May 22, 1935. — January 28, 1936.

Present: Rugg, C.J., Pierce, Field, Lummus, & Qua, JJ.

*Probate Court*, Appeal, Disqualification of judge. *Evidence*, Presumptions and burden of proof. *Constitutional Law*, Impartial tribunal. *Executor and Administrator*, Compensation.

The refusal of a judge of probate to order a witness to answer a certain question was not shown to be prejudicial error if there was no offer to prove what his answer would have been.

An alleged statement by a judge of probate, advanced as a ground for a motion that the judge disqualify himself from passing on a certain matter, was not proved by an affidavit, based on hearsay, that the statement had been made, contradicted by other testimony.

It *was stated* that a motion that a judge of probate disqualify himself could be heard upon oral testimony or upon affidavits or upon both.

A probate judge was not disqualified to pass on the value of an administrator's services merely because it had been alleged, without proof, that he had said that the charge was reasonable and that to contest it would be a waste of time; and his acting as judge in the matter did not violate art. 29 of the Declaration of Rights nor the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

On appeal from a decree of a probate court with findings of fact and a report of the evidence, this court, on its own view of the evidence, reduced the compensation allowed to an administrator *de bonis non* from $25,000 to $18,000.

In the circumstances, a sum allowed an administrator *de bonis non* as compensation properly could cover services rendered to the estate before his appointment as well as those rendered thereafter.

Petition, filed in the Probate Court for the county of Hampden on September 5, 1934, for the allowance of an account of the petitioner.

The respondents filed a motion that the case be heard by some judge other than *Denison*, J., which was denied by him. The respondents appealed from the denial and also from the judge's refusal to order a witness to testify, as described in the opinion.

The account was allowed, and the respondents appealed from its allowance.

*T. H. Bresnahan,* (*J. Goldberg* with him,) for the respondents.

*E. H. Lyman, Jr.,* for the petitioner.

RUGG, C.J.    This is an appeal from a decree allowing the first account of Raymond T. King, administrator with the will annexed of the estate not already administered of the late Jane F. King.   The evidence is reported in full.   The trial judge, in response to request by the two contesting legatees, made a finding of material facts.   The main controversy between the parties relates to the charge of the accountant for his services.

Before the hearing began the contestants filed a motion requesting that some judge other than the judge of probate for Hampden County hear the case, because they believed that they could not get a fair and impartial trial before him on two grounds: (1) because he "is alleged to have said" to a named attorney representing the attorney for the contestants that the latter would be wasting his time and adding to the expenses of the estate by contesting the account, and (2) because the accountant had made a statement that the judge had told him that his charges were fair and reasonable.   Three persons signed an affidavit to the effect that they had heard the accountant make the statement attributed to him.   No affidavit was offered concerning the other ground, but the named attorney was called as a witness by the attorney for the contestants, the latter stating that he desired to examine him as to what he had told others concerning a colloquy between the judge and the attorney for the accountant.   When called as a witness, he testified that he participated in such a colloquy but declined to tell what was said unless ordered by the court, because he felt that it was of a confidential nature and should not be disclosed.   He was not ordered to testify as to what was said.   Manifestly the witness was not hostile to the contestants because he had represented their attorney on the occasion in question.   No affidavit was presented touching what was thus said, al-

though apparently two persons who had been told by the witness were in the court room, one being the attorney conducting the hearing for the contestants. No offer of proof was made as to the testimony expected from the witness. Therefore the exception to the refusal of the judge to order the question answered cannot be considered, because it does not appear that the contestants were harmed by the refusal. *Cook* v. *Enterprise Transportation Co.* 197 Mass. 7, 10. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 510. The first ground set forth in the motion, therefore, was wholly unsupported by affidavit or otherwise. During the trial the accountant testified that he never made the statement attributed to him in the motion, and that the judge had not said to him that his charges were reasonable. The affidavit as to this ground was based upon hearsay, touching the untruth of which there was categorical testimony. There was, therefore, no proof of this ground. Doubtless the judge could hear the motion on testimony given by witnesses, or on affidavits, or on both. *Universal Adjustment Corp.* v. *Midland Bank, Ltd., of London*, 281 Mass. 303, 307.

The fundamental law of the Commonwealth is that "It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." Art. 29 of the Declaration of Rights of the Constitution. That declaration is essential to the end that "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." Art. 11 of the Declaration of Rights. These constitutional guaranties have been rigidly enforced. *Williams* v. *Robinson*, 6 Cush. 333. *Hall* v. *Thayer*, 105 Mass. 219. *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 178–179. *Harrington* v. *Boston Elevated Railway*, 229 Mass. 421, 432–433. *Preston* v. *Peck*, 271 Mass. 159. *Thomajanian* v. *Odabshian*, 272

Mass. 19, 23. *Ott* v. *Board of Registration in Medicine,* 276 Mass. 566, 574–575. The words in these decisions declaring the essentials of judicial conduct need not be repeated. The administration of justice by the courts ought not only to be, but it ought to appear to be, impartial and efficient. The principles of natural justice as well as the mandates of the Constitution establish a strict and lofty standard.

There is, in our opinion, nothing in this record to support the contention that the trial judge was not impartial and free from bias in the consideration of this case. It has been held that even an earlier expression of opinion as to a matter to be decided does not disqualify a judge or indicate want of competency to hear fairly and decide impartially all issues. *Dittemore* v. *Dickey,* 249 Mass. 95, 100. *Preston* v. *Peck,* 279 Mass. 16, 19. *Charles County* v. *Wilmer,* 131 Md. 175, 180, 181. *Craven* v. *United States,* 22 Fed. Rep. (2d) 605, 607. The conduct of the trial did not reveal prejudice on the part of the judge. Some unseemly remarks did not exceed the limits held free from reversible error in *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, 432–433. The fact that the judge went forward with the hearing in the circumstances disclosed was a most unequivocal assertion that on his own conscience there was no disqualification.

The provisions of our own Constitution already quoted are at least as rigorous in exacting high standards of judicial propriety as are those of the Fourteenth Amendment to the Constitution of the United States. The provisions of that amendment, that no State shall deprive any person of his property without due process of law, or deny to any person the equal protection of the laws, govern the actions of courts. *Mooney* v. *Holohan,* 294 U. S. 103. In our opinion the present record fails to show any infringement of this mandate.

Jane F. King, the testatrix, died in April, 1929. She left a will wherein John J. Murray, then an attorney of excellent reputation, was nominated as executor. He was appointed to that trust in May, 1929, and gave a bond without sureties

in the sum of $75,000. The estate was believed to be substantial. No inventory was filed until May, 1930. The residue of the estate was to be divided among three relatives of the testatrix. The residuary legatees, not having received any money from the estate, went to the accountant in May, 1930, for the purpose of having him look after their interests. This appears to have been his first connection with the estate.

The accountant had then been a member of the bar about ten years. The work which he did in connection with the estate of the testatrix was described chiefly by himself. His testimony in that respect was not contradicted in any material particulars. It has not been assailed as to its general veracity by the contestants. It was apparently believed by the trial judge, as disclosed by his findings of material facts. Our examination of it convinces us of its credibility. The testimony of the accountant, therefore, ought to be and is accepted as true in its main features. Since this case comes before us on appeal with full report of the evidence, according to equity practice, it is the duty of this court in these circumstances to examine the evidence and, giving due weight to the finding of the trial judge and not reversing it when made on conflicting testimony, unless plainly wrong, to decide the case upon our own judgment. *Lindsey* v. *Bird,* 193 Mass. 200. *Rubenstein* v. *Lottow,* 220 Mass. 156, 165–166. *Martell* v. *Dorey,* 235 Mass. 35, 40. *Tuells* v. *Flint,* 283 Mass. 106, 108–109. *Bowles* v. *Comstock,* 286 Mass. 159, 167. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 84.

A summary statement of the testimony of the accountant is as follows: The accountant, after his employment by the residuary legatees, conferred with the executor on many occasions and was told that the delay in settlement of the estate was due to an action at law on a note made by the testatrix. The contestants wanted the executor removed. The accountant advised against that course and did not pursue it. Finding that no inventory or account had been filed, he prepared petitions and secured the allowance thereof ordering that these be filed. Then he

urged that the executor file a bond with a surety. In September, 1930, in the name of one of the contestants, he prepared and filed a petition that such bond be filed. That petition was allowed in October, 1930. Shortly afterward such bond was filed. In April, 1931, he filed in the Probate Court his appearance for the estate. He appeared for the executor in the action on the note, had the case advanced for trial, and when reached in October, 1931, caused it to be dismissed for failure to prosecute. The accountant did not know, until November, 1931, that the executor had appropriated money of the estate to his own use and that he was penniless. The executor was removed in November, 1931. The accountant was appointed special administrator of the estate of the testatrix on November 12, 1931, and administrator on December 16, 1931. As special administrator, and later as administrator, the accountant spent a great deal of time in investigating the property of the testatrix and her deceased husband, and in ascertaining what had become of it. After prolonged and detailed examination and investigation of mortgages of real estate and deposits in savings banks the true condition of the estate was revealed. Prolonged hearings were held in the Probate Court. It was finally disclosed that before the death of the testatrix the executor had embezzled from her many thousands of dollars and that he took to his own use most of the rest of her estate which came to his hands as executor. It appeared that the action on the alleged note had been brought by the executor in the name of a fictitious person in order to gain delay in the distribution of the estate. After protracted, strenuous and detailed labor by the accountant in exploring the condition of the estate and probing the wrongs committed by the executor, and many conferences between various counsel, the executor was charged in his accounting with $92,009.50. The executor prior to these events was an attorney with an enviable reputation and considerable practice. His standing in the community and at the bar was high. Positive and convincing evidence was needed and was found by the accountant to establish such perfidious

conduct on the part of such a man. The former executor was charged upon his third account by a decree from which the surety on his bond appealed to this court. It was necessary for the accountant to brief and argue that appeal. *Murray* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 15. Thereafter, upon further hearings, the account of the executor was allowed showing the balance just stated. From that decree no appeal was taken. The accountant then brought an action upon the bond of the executor and after stubbornly contested litigation collected $70,000 from the surety. *King* v. *Murray*, 286 Mass. 492. The accountant found a cash purchaser for real estate owned by the testatrix and secured an abatement of the inheritance tax originally assessed and the levying of a new and much smaller tax. The accountant, when appointed to his trust, had $859.14 and a piece of real estate. His work has resulted in increasing the total of the estate to $78,284.87 and an unsatisfied execution for $22,009.55 against the executor. The accountant has devoted a considerable part, but by no means the whole, of his time during a little more than four years in connection with this estate. He did not present a detailed statement of the time thus spent, either by days or by hours. He has charged for his services $25,000. This includes not only his own services but those of his law partner and office force. The contestants first assented in writing to the account but later withdrew that assent, with permission of the trial judge. The equity rule declared in *Wyness* v. *Crowley*, 292 Mass. 461, has no relevancy to these facts. See *Blake* v. *Pegram*, 101 Mass. 592, 598; *Barrett* v. *Briry*, 256 Mass. 45; *Coulson* v. *Seeley*, 277 Mass. 559, 563.

All the facts with reference to the services of the accountant are narrated in his testimony. That is accepted as true. The position of the trial judge adds nothing to them.

The finding of the trial judge as to the value of the services rendered by the accountant rests upon that testimony. Although two lawyers were called by the accountant and two by the contestants, to give their opinions as to the value of the services of the accountant, those opinions were neces-

sarily based on the same testimony. In this Common-
wealth a fiduciary like the accountant "shall have such
compensation for services as the court may allow." G. L.
(Ter. Ed.) c. 206, § 16. As was said by the court, speaking
through Chief Justice Knowlton in *Parker* v. *Hill*, 185 Mass.
14, 15, "The meaning of the statute is that the compensa-
tion is to be just and reasonable in each case, considered by
itself alone." *Blake* v. *Pegram*, 101 Mass. 592, 600. *May*
v. *Skinner*, 149 Mass. 375, 380. The true principle is that
adequate reward should be made according to the circum-
stances of each case, considering the importance and diffi-
culty of the work performed as well as the time actually
devoted to it. *May* v. *May*, 109 Mass. 252, 258. *Blair*
v. *Columbian Fireproofing Co.* 191 Mass. 333. *Cummings*
v. *National Shawmut Bank of Boston*, 284 Mass. 563. We
think that the amount charged by the accountant is more
than is just and reasonable. That is a subject about which
further review or discussion of the evidence would shed no
additional light. After full consideration of all the circum-
stances and giving due weight to the decision of the judge,
we are of opinion that a charge of $18,000 would be just and
reasonable. *Frost* v. *Belmont*, 6 Allen, 152, 165. *O'Riorden,
petitioner*, 244 Mass. 472. *Newton* v. *Consolidated Gas Co. of
New York*, 259 U. S. 101.

The contention that the accountant can be awarded in
this proceeding nothing for services rendered by him prior
to the date of his appointment as administrator, or as special
administrator, cannot be supported. It is plain from a
study of the entire record that the efforts of the accountant
from May, 1930, to August, 1934, were for the benefit of
the estate of the testatrix and not of any individuals. The
rights and interests of all beneficiaries under the will were
protected and preserved by him even during the period
before the removal of the executor. It was due to his
achievements that the misappropriations by the executor
were brought to light. His work as a whole was a unit
devoted to a single end. All the facts are spread upon the
record. There has been a full hearing. All the parties
interested in the subject are before the court, including the

estate of the testatrix, and the beneficiaries under her will, and those who originally employed the accountant. It would be a vain duplication of litigation with its consequent expense not to adjust the whole matter in this proceeding. *Cook* v. *Howe*, 280 Mass. 325, 329. The allowance of this compensation as a single sum, including that before as well as after the actual appointment of the accountant as administrator, was warranted by the circumstances. *Little* v. *Little*, 161 Mass. 188, 201. It is provided by G. L. (Ter. Ed.) c. 215, § 39, that probate courts may ascertain and determine the amount due for services rendered by any person in connection with the administration of the estate of a deceased person. Although that statute is not to be broadly extended, *Ginzberg* v. *Wyman*, 272 Mass. 499, 501, *Conley* v. *Fenelon*, 266 Mass. 340, 345, it supports the conclusion that in the peculiar conditions of the case at bar the allowance to the accountant of a single sum was rightly made. *Tomlinson* v. *Flanagan*, 287 Mass. 38, 46. *Moushegian* v. *Sheppard*, 279 Mass. 49, 53.

It is not necessary to examine one by one the requests for rulings presented by the contestants. Whatever error may be disclosed by the record has been corrected by this decision.

The result is that the decree must be reversed; a new decree is to be entered modifying the account in Schedule B by substituting $18,000 for the several items aggregating $25,000 for services of the accountant, and in Schedule C by the addition of $7,000, and allowing the account as thus modified.

*Ordered accordingly.*