ERASTUS T. BEARSE & another, executors, *vs.* DOROTHY M. STYLER & others.

Barnstable.   May 15, 1941. — May 29, 1941.

Present: FIELD, C.J., DONAHUE, ·LUMMUS, DOLAN, & RONAN, JJ.

*Executor and Administrator,* Compensation.   *Attorney at Law.*

Upon reported evidence on appeal from a decree by a judge of probate, allowances by him of compensation in the sums of $4,000 and $3,000, respectively, to the two executors of a will for administering an estate of $150,000 consisting mainly of bank deposits, securities, and loans, many of them secured by mortgages, were reduced to $2,500 and $1,000, respectively; and an allowance of a fee to the executors' attorney of $7,500 was reduced to $6,000.

PETITIONS, filed in the Probate Court for the county of Barnstable on July 29, 1939, and June 25, 1940, respectively, for the allowance of the first and second accounts of the executors of the will of Alonzo F. Cahoon, late of Chatham.

The case was heard by *Campbell,* J.

*M. R. Brownell, (C. H. Whittier* with him,) for the respondent Styler.

*F. B. Frederick, (H. W. King* with him,) for the petitioners.

RONAN, J.   These are appeals by one of the residuary legatees under the will of Alonzo F. Cahoon, who died April 10, 1938, from decrees of the Probate Court of Barnstable County allowing the first and second accounts of his executors which covered the period from May 24, 1938, to May 29, 1940.   The only items now in dispute are those representing payments of $4,000 to Bearse, one of the executors, $3,000 to Moore, the second executor, and $7,500 to their counsel.   The appeals are here with a report of the evidence together with a report of the material facts made by the trial judge.

The estate amounted to about $150,000 which, outside of a parcel of real estate of the value of $7,980 and tangible personal property of the value of $770, consisted of bank

deposits and shares in coöperative banks inventoried at
about $52,000, and stocks, securities and promissory notes
inventoried at over $80,000. Many of these notes were
secured by mortgages upon real estate. The testator
several years before his death had given up his seafaring
activities, and invested his savings in stocks and bonds, in
local mortgages and in loans. He was frugal and shrewd.
The accounts of his various transactions were not kept
in an orderly fashion. "His books consisted of isolated
notes and scraps of paper" upon which he had written in
an illegible hand. He seldom employed an attorney.

Moore, one of the coexecutors, is over eighty years of
age and on account of illness was unable to appear at the
hearing in the Probate Court. He was a brother-in-law of
the decedent. There was no evidence of his ability or
experience in the settling of estates. His principal duties
were to sign such papers as were presented to him, to sign
checks for payments for amounts due from the estate, and
to indorse for deposit checks received by the estate. He
was unable, on account of his health, to stay for any great
length of time at any of the conferences with Bearse, the
other executor, their attorney, and with some of the bene-
ficiaries. Many of these conferences related to the question
of fees.

Bearse had extensive business and executive experience.
He was a selectman and a director in a bank, and he con-
ducted an insurance business. He gave a good deal of time
to the estate, mainly in respect to ascertaining the amounts
due by mortgagors and in conferring with them. He had
attended to a few details of the testator's business during
the latter's lifetime, and appeared to be a confidant and
adviser of the decedent. Bearse was far more active than
Moore and undoubtedly had many conferences with the
attorney, to whom he rendered whatever assistance he
could.

The attorney had had about twenty-five years of business
experience before he was admitted to the bar, ten years ago.
It was necessary, on account of the manner in which the
testator kept his records, to check the registry of deeds to

verify the number of outstanding mortgages and to determine from the fragmentary memoranda left by the testator the amounts due from the mortgagors. The amount due on these mortgages amounted to approximately $27,000, all of which was collected by the attorney. He foreclosed eight or nine of these mortgages. The unsecured notes aggregating between $6,000 and $7,000 were collected, with the exception of $300 or $400. An action against the estate on account of an indorsement upon a note by the testator was adjusted without trial, and, later, a judgment was obtained without trial against the maker of the note, who paid after a levy made on the execution. The attorney made out and filed the various tax returns required by the Federal and State governments, and paid the amounts due according to the returns filed. The Federal tax collector does not consider the amount already paid as full satisfaction of the tax unless the fees are established in the amounts set forth in these accounts. Reserving a sufficient amount for possible additional tax and other liabilities, the estate has held, since January, 1940, over $23,000, which ought to have been paid out to the legatees. The attorney for the estate has had numerous conferences with the executors, with mortgagors and other debtors of the estate, with both State and Federal taxing officials, and with the legatees. He has attended to the transfers of stock to the distributees, and has performed the ordinary duties of an attorney that are required in settling an estate. He testified that his services are worth $7,500.

The executors were fiduciaries, bound to administer the estate in accordance with the law, under the supervision of the court by which they were appointed and to which they were under a strict obligation to account. Their appointments were not an authorization to embark upon a commercial undertaking in which men strive to acquire some personal advantage or individual gain, but were commissions by virtue of which they were empowered to administer lawfully and faithfully a private trust, with the single purpose of protecting and furthering the interests of the beneficiaries whom the appointees represented. The executors

were the instrumentalities by which the intention of the testator was to be realized. Compensation was a mere incident arising out of the actual performance of their duties. They were not entitled to receive an amount that they might have thought was honestly due. Any self-interest, which might naturally influence their own determination of their remuneration, was adverse to the beneficiaries whom they served. It was to avoid any difficulties that might arise from this conflict of interest that the law furnished the yardstick to measure the compensation of fiduciaries in the execution of their trusts. They are entitled to such fair and reasonable compensation as the court may allow. G. L. (Ter. Ed.) c. 206, § 16. *Howard* v. *Hunt*, 267 Mass. 185. *Moulton* v. *Thompson*, 291 Mass. 308. We accept as true, as did the trial judge, the testimony showing the work performed by each executor. Moore did not devote much time to the estate. Bearse died in December, 1939. The testimony, however, does not support the conclusion that such services were worth the amount that was paid to the executors. There is no adequate reason why this estate should not have been settled in 1939. The controversy over fees has unduly delayed the administration of this estate. The second account, which was filed on June 25, 1940, shows few payments later than the preceding January.

After giving full credence to all the testimony relative to the rendition of services by the executors, and due weight to the decision of the judge, we are of opinion that the compensation allowed to the executors should be reduced. Moore is entitled to $1,000 and Bearse to $2,500 in full for all services rendered as executors up to May 29, 1940. *Frost* v. *Belmont*, 6 Allen, 152, 165. *O'Riorden, petitioner*, 244 Mass. 472. *Creed* v. *McAleer*, 275 Mass. 353. *King* v. *Grace*, 293 Mass. 244.

The allowance of the accounts included an implied finding that the judge deemed the charges made by the attorney for his services were just and reasonable. All of these services are narrated in the testimony. An examination of the testimony shows hardly any dispute concerning the extent of the actual services rendered by the attorney.

The judge apparently believed that all such services had been performed. We accept as true the testimony of the services rendered by the attorney. The finding of the judge as to the value of these services and the opinions of the three lawyers as to their value are all based on the same testimony. The different factors that ought to be considered in fixing fair and reasonable compensation for the services performed by an attorney have been frequently stated by this court. It is unnecessary to repeat them. *Blair* v. *Columbian Fireproofing Co.* 191 Mass. 333, 336. *Cummings* v. *National Shawmut Bank of Boston,* 284 Mass. 563. *Culhane* v. *Foley,* 305 Mass. 542. The evidence has been carefully examined and a more detailed narration of it is not required. In all the circumstances, and according appropriate weight to the decision of the judge, we are of the opinion that a charge of $6,000 would be fair and reasonable compensation for all the services rendered by the attorney during the periods included in both accounts. *O'Riorden, petitioner,* 244 Mass. 472. *King* v. *Grace,* 293 Mass. 244. *Lewis* v. *National Shawmut Bank of Boston,* 303 Mass. 187.

The item in schedule B of the first account under date of April, 1939, showing a payment to Bearse in the sum of $1,000 should be disallowed to the extent of $500. Schedule C of this account should be increased by this amount. Schedule A of the second account should consequently be increased by $500. Items 81, 82, 83 appearing in schedule B of the second account, showing payments for executors' services, should be disallowed; and item 79 of the said account, showing a payment of $1,500 to the attorney, should be disallowed. The balance shown in schedule C should therefore be increased by $5,000.

Costs and expenses of this appeal as between solicitor and client may be allowed to the appellant in the discretion of the Probate Court.

*Ordered accordingly.*