EDWARD A. McLAUGHLIN & another *vs.* OLD COLONY TRUST COMPANY, executor.

Middlesex.    November 6, 1942. — February 25, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Attorney at Law.  Executor and Administrator*, Attorney.  *Probate Court*, Allowance for services, Appeal.

In a proceeding in a Probate Court under G. L. (Ter. Ed.) c. 215, § 39, the amount due the petitioner for services rendered in connection with the administration of a decedent's estate is to be determined as though an action at law had been brought and not according to the stricter rule applicable to "costs and expenses" allowed "in the discretion of the court" under § 45.

The principles adopted by this court in dealing with equity and probate appeals are applied in dealing with an appeal from a decree upon a petition under G. L. (Ter. Ed.) c. 215, § 39, with a full report of the evidence and detailed findings of fact.

Upon an appeal, with a report of the evidence and of findings by the judge, from a decree of a Probate Court under G. L. (Ter. Ed.) c. 215, § 39, allowing two attorneys $30,000 for their services in connection with the administration of a decedent's estate valued at about $2,000,000, this court reduced the allowance to $15,000 where it appeared that the attorneys had made a preliminary investigation in California of the merits of a contest of the decedent's will and of some questions of genuine difficulty depending upon whether the decedent's domicil was in California or in Massachusetts, had procured the appointment of the proponent as special administrator, had performed other work of a "routine" nature, and had spent a substantial amount of time in their work, but that a settlement of the will contest by an agreement directly between the contestants and the residuary legatees and allowance of the will by consent had been effected almost entirely by counsel for the legatees, that the questions of domicil never had been formally raised in the proceedings nor specifically passed upon, and that the petitioners had not carried through any major accomplishment to completion by their own unaided efforts.

PETITION, filed in the Probate Court for the county of Middlesex on November 12, 1941.

The case was heard by *Monahan*, J.

*H. R. Guild,* (*H. V. Atherton* with him,) for the respondent.
*F. H. Chase,* for the petitioners.

QUA, J.    The petitioners, two attorneys at law, seek by this petition filed in the Probate Court under G. L. (Ter. Ed.) c. 215, § 39, a determination by the court of the amount due them for services rendered to the respondent in connection with the administration of the estate of Fannie E. Morrison, deceased, including a settlement made with heirs who had appeared in opposition to the allowance of Mrs. Morrison's will. *Moushegian* v. *Sheppard,* 279 Mass. 49. The judge fixed the total value of the petitioners' services at $30,000, and from a decree for payment of the unpaid balance of that sum the executor appeals.

This statutory proceeding in the Probate Court under § 39 is in the nature of an alternative to an action at law against the executor. *Ginzberg* v. *Wyman,* 272 Mass. 499, 501. *Moushegian* v. *Sheppard,* 279 Mass. 49, 54. It follows that the amount of the petitioners' compensation is to be determined as if an action at law had been brought and not according to the stricter rule applicable to "costs and expenses" allowed "in the discretion of the court" under § 45, as laid down in *Boynton* v. *Tarbell,* 272 Mass. 142, 145, and *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191.

It is our duty to deal with the case as we ordinarily deal with equity and probate appeals coming to us, as this does, with a full report of the evidence and detailed findings of fact by the trial judge. We are to deal with all questions of law and fact, but we do not reverse findings of fact involving the credibility of oral testimony unless convinced that they are plainly wrong. *Culhane* v. *Foley,* 305 Mass. 542.

The testatrix died in California on April 20, 1941, at the age of eighty-four. She had formerly lived in Weston in this Commonwealth, but in 1913 her husband, since deceased, had purchased an estate in California, which for a number of years was "used for seasonal occupancy." In 1927 the deceased sold her house in Weston and thereafter never left California. There was, however, much evidence of her intention to retain her domicil in Massachusetts down to the

time of her death, and whether she was then in fact domiciled in this Commonwealth or in California could well have become the subject of serious controversy. By her will and codicils she gave various pecuniary legacies amounting to $211,000, left the residue of her estate in equal parts to the Massachusetts General Hospital and to the Massachusetts Society for the Prevention of Cruelty to Animals, and named the respondent as executor. The respondent, having been appointed special administrator, filed an inventory showing a total estate of slightly less than $2,000,000, although a witness called by it testified to a value of approximately $1,700,000. The judge accepted the higher figure, and we cannot say that he was plainly wrong.

Early in May, 1941, the respondent employed the petitioner McLaughlin to act as its counsel in the Morrison estate. At his request the petitioner Davis was joined as his associate upon the understanding, assented to by both petitioners, that the additional employment of Mr. Davis should not increase the legal expense. Before 1932, Mr. McLaughlin had been an active trial lawyer in Boston, and he had resumed his practice there in 1938. Both he and his father, also an attorney, had done some legal work for Mrs. Morrison. Mr. Davis was admitted to the bar in 1926 and has carried on a general practice since that time. The judge found that both petitioners are well known and reputable attorneys, thoroughly experienced and skilled in probate matters and in the trial of cases.

At about the time of the employment of the petitioners it became known that certain cousins of the deceased, represented by a Mr. Barnes of the Boston bar, might contest the allowance of the will, and it seemed that a special administrator should be appointed. The judge found that the petitioners were successful in inducing the contestants to agree to the appointment of the respondent as sole special administrator, and that this was "of great advantage to the estate" and "had a very definite favorable influence upon the amount of the settlement" which later was made. We do not doubt that it was advantageous to have a special administrator appointed, and that the petitioners were

instrumental in procuring the appointment, but if the words above quoted are to be construed as meaning that the appointment of the respondent instead of some other presumably well qualified person or persons whom the Probate Court might have appointed if it had not appointed the respondent was a unique achievement on the part of the petitioners for which they are entitled to some peculiar reward, as the petitioners seem to argue, we cannot agree with that conclusion.

Since the persons who had been in immediate contact with the deceased for the last fourteen years preceding her death were all in California, it became necessary to have an investigation conducted there to ascertain whether any foundation for a will contest existed. Accordingly, the petitioners went to California by airplane and remained there about a week, during which time they interviewed numerous witnesses who had known the deceased and examined papers in their possession, had conferences with Mr. Barnes, who was then also in California, and consulted at length with California lawyers on various questions of law. They also made some investigation into certain gifts to charities and others, amounting to about $1,500,000, which the testatrix had made in her later years and which Mr. Barnes, representing the contestants, had contended were invalid. As a result of these investigations the petitioners became convinced that there was ample evidence to sustain the will and that the gifts were valid.

But the matter of domicil remained. This involved questions of law, some of which were readily solved by reference to California statutes, but others of which presented genuine difficulties. Among the latter were questions of inheritance taxes, which might fall very heavily on the residuary legatees if the estate were settled in California, questions as to the right of California to come into the courts of this Commonwealth and to raise the issue of jurisdiction before or after probate of the will here, and questions as to whether, disregarding probate of the will here, California could institute valid proceedings in her own courts. See *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292; *Texas*

v. *Florida*, 306 U. S. 398. These matters were important in themselves, and they also bore upon the will contest, since Mr. Barnes, as a makeweight for a settlement, held out the suggestion that he might insist upon administration of the estate in California, where he could have had a jury trial as of right. The petitioners examined into all these matters, with the assistance of California counsel, in so far as time permitted.

Upon the return of the petitioners from California a conference was held on June 12, 1941, at the place of business of the respondent. There were present the petitioners, certain officers of the respondent, and two attorneys representing respectively the two residuary legatees, which would be principally affected by the decisions finally adopted. The petitioners reported orally the conclusions they had reached as a result of their investigations in California. As to what happened during the rest of this meeting the parties are in sharp conflict. The respondent insists that it was not wholly satisfied with the conduct of one of the petitioners while in California; that the petitioners were told in substance that their services were no longer desired in respect to the will contest or the question of domicil and that they could continue to represent the respondent only in respect to the "routine probate matters"; and that it was understood that from then on counsel for the residuary legatees, or one of them, would handle in behalf of the respondent all matters relating to the will contest and to domicil. The petitioners deny that their status was changed at this interview. The judge found that counsel for the residuary legatees "did not supplant the petitioners" as attorneys for the respondent, and that such counsel came into the matter because the respondent would not take the responsibility of making a settlement without their approval. If these findings mean that counsel for the residuary legatees never acted for the respondent in relation to the will controversy, and if we accept the findings as made on conflicting evidence and as not plainly wrong, it is nevertheless very clear from the evidence that after June 12 the primary responsibility of negotiating and concluding a settle-

ment of the will controversy rested, to the knowledge of all concerned, upon counsel for the residuary legatees and not upon the petitioners.

In the following autumn, apparently about the first of November, a settlement was effected by means of an agreement running directly between the contestants and the residuary legatees. The respondent was not a party to it. By the terms of the settlement the contestants were to receive a total of $47,500, which included a fee for Mr. Barnes. By consent the will was allowed without testimony. The entire estate remained in the hands of the respondent as executor. The question of domicil was never formally raised in the proceedings and has never been passed upon except in so far as may be implied in the allowance of the will and codicils. The judge found that this settlement "was very favorable to the estate and would not have been obtained except for the services of the petitioners." He further found that the "very favorable settlement which was made was greatly effected through the services of the petitioners." In so far as these findings mean that such an investigation as the petitioners made to ascertain whether the contest had any sound basis was a necessary preliminary to an intelligent settlement, the evidence supports the findings. But the findings cannot be taken to mean that a highly favorable settlement was secured through any peculiar skill or any extraordinary effort on the part of the petitioners, or of any one for that matter. Rather it seems to have resulted from lack of substance in the contestants' case. Nor were the petitioners primarily responsible for bringing the parties to a final agreement, although it could have been found that they coöperated to some extent with counsel for the legatees in reaching that result.

The judge further found that the petitioners induced Mr. Barnes not to file a motion to dismiss the petition for probate of the will and codicils on the ground of lack of jurisdiction, and that this was "of great benefit to . . . [the] estate." Estates ought to be settled in the jurisdictions where they belong. It may be doubted how far efforts of counsel to procure settlement of an estate in one

jurisdiction rather than in another without a decision of a fairly disputable question of the domicil of the deceased ought to be the subject of a charge against the estate. At any rate, in weighing the importance of this finding it must be remembered that although Mr. Barnes was using the argument of jurisdiction to try to get a settlement for the contestants, he had nothing to gain by actually raising the issue in court as long as he still hoped to settle in Massachusetts.

Other work performed by the petitioners not hereinbefore expressly mentioned consisted in general in drafting and filing a petition for allowance of the will and codicils, in securing authority for the respondent as special administrator to pay debts and expenses and to sell securities, in going over correspondence covering a long period of time between the deceased and the respondent, in arranging with Mr. Barnes for an extension of time within which he might file a motion for jury issues, in some examinations of law, and in the interviews, telephone calls, and letters incident to this service. This work may be described as of a "routine" character. It required no peculiar skill or effort and did not involve any contest in court. The judge found that the petitioners spent on all the work done by both of them a total of approximately one thousand hours on between one hundred twenty and one hundred thirty days.

"In determining what is a fair and reasonable charge to be made by an attorney for his services many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured." *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569. No one of these elements is necessarily decisive. The weight to be given to each of them will vary according to the nature of the services rendered in the particular instance under examination. In the present in-

stance there was no evidence that the services of the petitioners were in special demand greater than the demand for the services of other competent practitioners. The petitioners did, however, perform valuable work for which they are entitled to be reasonably paid. But they did not by themselves carry any major undertaking through to any final result. They did not in any true sense prepare the will case for trial. Their work in California can be fairly characterized as little more than a preliminary survey of the situation. They brought back with them no statements of witnesses. So far as appears, although they procured some memoranda from California lawyers, they never prepared the full and careful briefs that would ultimately have been required on the issues really in doubt. They recovered no money for their client. They did not settle the will controversy in the ordinary sense of completing by their exertions a settlement of a dispute between parties, although they did do some things in connection with the settlement. Their client was not even a party to it. No such sum as $2,000,000 ever hung in the balance, depending upon their efforts. The most that Mr. Barnes ever asked for the heirs was $300,000, and he settled with the legatees for $47,500. All of the work done by the petitioners was done after the first of May and before the twelfth of November, when the petition now before us was filed, and the more important part, including the trip to California and the report upon it, was ended by June 12. As soon as it appeared that the will contest would be settled the questions relating to domicil, which presented the principal difficulties, ceased to be of present importance. None of these questions has been decided. We do not mention these things to disparage the petitioners or to belittle the work done by them. We mention them only to show the character of the work done and the conditions and limitations by which it was governed.

Taking into account all the elements involved, including the original understanding that the employment of the petitioner Davis should not increase the charge for services, and giving due weight to the findings of the trial judge,

we are of opinion that the petitioners should receive in all for their services the sum of $15,000, and that after crediting $2,000 already paid, the decree should require the respondent to pay them the balance of $13,000. See *O'Riorden, petitioner,* 244 Mass. 472; *King* v. *Grace,* 293 Mass. 244; and *Bearse* v. *Styler,* 309 Mass. 288.

The decree is to be modified in accordance with this opinion and as so modified is affirmed.

*Ordered accordingly.*