Riley, P. J.
The plaintiff brought this action against the defendant Penan to recover the sum of $2000.00 under the terms of the following sealed instrument:
Agreement made this twenty-third day of August 1945, between Hyman Jaffee and Morris B. Rosenberg, both of Fitchburg, Massachusetts. Whereas, both parties have entered into a partnership known as the R. & J. Leather Goods Company for the manufacture of ladies’ handbags: And whereas, both parties have been employees of H. Margolin & Company, Inc. of Fitchburg, Massachusetts, and have given notice to H. Margolin & Company, Inc. of their termination of their employment: And whereas, the R. & J. Leather Goods Company have already leased a factory space in Fitchburg, Massachusetts, for the manufacture of their product, and as evidence of good faith by each partner in continuing the partnership business, they have placed in the hands of Attorney Harry D. Penan of *82 Fitchburg, Massachusetts, the sum of One thousand ($1000.00) Dollars each with the understanding that in the event that either Hyman Jaffee or Morris B. Rosenberg returns to work and becomes an employee of H. Margolin & Company, Inc. then the other party remaining in the partnership shall receive Two Thousand ($2000.00) Dollars as liquidated damages for breach of their agreement from the money held by Attorney Harry D. Penan. It is further agreed between the parties that in the event that there is a termination of the partnership as specified above, the payment of the $2000.00 shall not be made before September 15, 1945. In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.
Morris B. Rosenberg.
Hyman Jaffee.

Witness.

He filed an answer setting up that he had no interest in the subject matter in controversy and was merely a stakeholder and asked that the defendant Jaffee be summoned in and made a party to the action. Jaffee duly appeared and filed an answer admitting the execution of the contract in question but denying any valid partnership existed between himself and Rosenberg and that the contract executed by the parties was contrary to public policy and unenforceable and asked that the sum of $1000.00, deposited by him with the defendant Penan, be ordered returned to him. Jaffee is hereinafter referred to as the defendant.
The trial judge, upon evidence that well warranted his findings, found that when the contract in question was executed Rosenberg and Jaffee were fellow employees of H. Margolin & Company, which company is engaged in the *83 leather business; that for more than a year prior thereto they had extensively discussed forming a partnership to conduct a business that would be competitive with the Margolin Company; that a few days before they had orally agreed to become partners, each contributing $2000.00 and agreeing to draw $50.00 per week after the expiration of four weeks, and that, acting upon this agreement, they hired a place of business in Fitchburg and paid $150.00 rent, of which each contributed an equal sum, before the agreement in suit was signed. They also deposited $1850.00 in the bank in an account which was intended to be a partnership account and required each of their signatures for withdrawal, signed a check on the account for payment of a telephone to be installed at their place of business and the defendant, after the agreement was signed, stated to the bank in writing that they were doing business as partners. Fearing that their employer might try to dissuade one or both from going through with the partnership and would re-employ him, they agreed to each put $1000.00 in escrow in the hands of Mr. Penan, attorney-at-law, and as a result of their visit to him the agreement was drawn and signed in his office. Both Jaffee and Rosenberg left the employ of the Margolin Company on September 1, 1945, but Jaffee returned to work for the Company on September 5th in violation of his written agreement with Rosenberg.
The judge found that the plaintiff kept his agreement with Jaffee in every respect and continued in the business which was to be carried on as a partnership. He found that the agreement for liquidated damages was a reasonable one, found for the plaintiff and ordered that the $2000.00 held by Atty. Penan be paid to the plaintiff.
The defendant Jaffee filed fifteen requests for rulings, of which twelve were refused by the trial judge. All but one, which prayed that the court order $1000.00 paid to both *84 Jaffee and Rosenberg, were to the effect that the contract sued upon was unenforceable because against public policy, was in restraint of employment or that the action should be brought by the partnership or that no partnership existed .at the time the agreement was signed. In his brief the defendant has not argued that the judge erred in denying these requests and, consequently, we need not consider them specifically. Eastern Advertising Co. v. Shapiro, 263 Mass. 228 at 234; Commonwealth v. Congdon, 265 Mass. 166 at 168; Sokoloski v. Splann, 311 Mass. 203, 206; Connell v. Maynard, Mass. Adv. Sh. (1948) 67 at 68. It is enough to say that we do not think he was wrong in deciding that in view of all the circumstances the agreement for liquidated damages was not unreasonable and, consequently, invalid. Guerin v. Stacy, 175 Mass. 595, 597, where Holmes, C. J. says, “We heartily agree with the Court of Appeals in England that so far as precedent permits the proper course is to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties, and therefore that in general when parties say that a sum is payable as liquidated damages they will be taken to mean what they say and will be held to their word. ’’ Leary v. Laflin, 101 Mass. 334; Anchor Electric Co. v. Hawks, 171 Mass. 101; Kaplan v. Gray, 215 Mass. 269; Factory Realty Corp. v. Corbin-Holmes Shoe Company, 312 Mass. 325 at 332 and cases cited.
Neither do we think it essential that a valid, formal partnership existed at the time the agreement was signed in order to entitle the plaintiff to recover. Morse Twist Drill and Machine Co. v. Morse, 103 Mass. 73, 75; Lindsay v. Swift, 230 Mass. 407, 412.
The defendant has argued that the judge, by granting the plaintiff’s 26th request, which he did, has made that the law of the case and that, consequently, a finding for the *85 plaintiff was precluded and that all the other findings for the plaintiff are inconsistent with that ruling and with each other. This request, as it appears in the report, is 1 ‘ There shall be a finding in this case for the defendant. ” It is inconceivable that an attorney for a plaintiff would file such a request or that the judge in this case would, knowingly, allow it in view of his detailed and final findings for the plaintiff and his denial of the defendant’s request asking for a finding in his favor. In the interest of justice and fair dealing, we feel we must conclude this was an inadvertence or typographical error and decline to adopt the contentions of the defendant.
After the finding in this case the defendant filed a request for report and a draft report and while the allowance of the draft report was pending, filed three motions, one for a new trial, one that the special justice who heard the case be disqualified from taking any further action in the case and another that he be disqualified from passing on the contents of or allowing the report. Under objection of the defendant, the judge who heard the case, after conference with the standing justice of the court at which counsel were present, heard the foregoing motions and the defendant claimed a report to his action in so doing and to the denial of two requests for rulings. The evidence in support of the defendant’s motions to disqualify is set out fully in the report. It appears therefrom that an attorney who had been in the armed services returned in October, 1945, and was sharing law offices in a suite with the special justice who heard the case at bar and two other attorneys, and that some time in April, 1946, he did the legal work in forming a corporation for the plaintiff Rosenberg, his wife and another associate, which was the first work he had done for him. The case was tried on March 27, 1946, and the judge’s finding was filed on May 3rd of that year. The defendant’s draft report was filed on May 14th and no fur *86 ther proceedings seem to have been taken in the case until November 5, 1946, .when a motion to disallow the defendant’s claim for report was filed by the plaintiff, which was set down for hearing on November 8th and continued several times thereafter. The motions to disqualify the trial judge and for a new trial were filed on November 29, 1946. The attorney who was an office associate of the trial judge testified that he did not know that Eosenberg had a case pending in the District Court of Fitchburg until two or three months after he had done his legal work for him and did not discuss that work with the special justice, nor was any reference made to the pending suit by the special justice to him at any time. The judge denied the motion for new trial and denied the motions to disqualify himself from passing upon the report or taking any further action in the case. With his decision he filed a memorandum stating that from the time of the original trial up to the time of decision he had no personal or other interest, bias or prejudice in or toward the subject matter of the suit or any of the parties involved therein and that no evidence was introduced and he knew of no facts which would indicate that the court should disqualify himself on any other grounds. He allowed requests filed by the defendant which set out fully the duties of the judge and the right of the parties to a trial by an impartial judge not subject to possible bias or prejudice. He denied a request that there was a justice and a special justice of the District Court who might perform such duties as were necessary in disposing of this case to remove the element of bias and partiality involved in the trial judge’s further handling of this case as contrary to the facts found by him and denied a request that the presiding justice and other special justice did not have any disqualifications from sitting in the case on the ground that no evidence was presented on that question. *87 We have carefully considered the evidence which was set out in detail and see no reason for disturbing the finding of the trial judge that he was entirely free from bias or prejudice.
Contrary to the contentions of the defendant, it was quite proper that the trial judge should pass upon these motions to disqualify himself. King v. Grace, 293 Mass. 244; Nicoli v. Berglund, 293 Mass. 426, 428, 429; Berlandi v. Commonwealth, 314 Mass. 424 at 445.
We find nothing in the record to support the contention that the trial judge was not impartial and free from bias in consideration of this case. The execution of the agreement was admitted and there was no serious controversy about any question of fact. The decision of the case was dependent upon the application of the law pertinent to the facts. The association of the trial judge with an attorney who had done some business for the plaintiff after the case was heard, of which the judge had no knowledge, is too slight a circumstance on which to base a disqualification of the judge. It is far different than the case of Beauregard v. Daley, 294 Mass. 315. Furthermore, as was said in King v. Grace, 293 Mass. 244 at 247, “The fact that the judge went forward with the hearing in the circumstances disclosed was a most unequivocal assertion that on his own conscience there was no disqualification.” There was no error in the denial by the trial judge of the defendant’s motion for a new trial, his denial of the motion to disqualify himself or in the denial or granting of the requests for rulings that have been argued. Accordingly, the report is ordered dismissed.