IN THE MATTER OF THE TRUST ESTABLISHED UNDER
ARTICLE SEVENTH OF THE LAST WILL AND TESTA-
MENT OF BERNARD R. ARMOUR, DECEASED, FOR
THE BENEFIT OF TOBY ARMOUR SCHNEIDER
(FORMERLY TOBY ARMOUR) AND OTHERS.

CHASE MANHATTAN BANK, GEORGE L. ARMOUR AND
GEORGE F. LEWIS, JR., AS TRUSTEES, ETC., PLAIN-
TIFFS-RESPONDENTS, v. TOBY ARMOUR SCHNEIDER,
DEFENDANT-APPELLANT, AND RUTH ARMOUR KAMEN
AND HARRY L. TOWE, GUARDIAN *AD LITEM*, DE-
FENDANTS-RESPONDENTS.

Argued October 10, 1960—Decided December 5, 1960.

Mr. *Elmer J. Bennett* argued the cause for plaintiffs-respondents (*Messrs. Carpenter, Bennett & Morrissey*, attorneys; *Mr. Stanley Weiss*, on the brief).

Mr. *Dickinson R. Debevoise* argued the cause for defendant-appellant Toby Armour Schneider (*Messrs. Riker, Danzig, Marsh & Scherer*, attorneys; *Mr. Richard L. Amster*, of counsel).

The opinion of the court was delivered by

FRANCIS, J.  The issue to be decided in this cause is whether plaintiffs, who are executors and trustees of decedent's estate, are entitled to double commissions on income which came into their hands as executors and was then transferred to themselves as trustees.  The trial court denied the request but the Appellate Division concluded that such a grant was mandatory under *N. J. S.* 3*A*:10–2.  61 *N. J. Super.* 50 (1960).  We granted certification on application of one of the trust beneficiaries.  33 *N. J.* 114 (1960).

Bernard R. Armour died leaving a will under which the residuary estate was divided into three equal trusts.  One such trust was established for appellant, Toby Armour Schneider (then Toby Armour), a daughter.  The trustees were directed to hold, manage and invest that one-third part of the residuary estate, to collect and receive the income therefrom and apply so much of the net income as in their sole discretion was necessary for the support, maintenance and education of the beneficiary.  The excess income was to be accumulated and paid to her when she became 21 years of age.  Thereafter, the trustees were directed to pay the total net income to her for life.  Upon her marriage, they were to turn over to her one-third of the principal of the trust. Provision was then made for distribution of the remainder at her death.

Plaintiffs were named both executors and trustees in the will.  (One of the nominees resigned and was replaced by one of the present plaintiffs, a matter of no significance in this proceeding.)  The testator died on December 1, 1949.  The estate was a very large one and the executors found its administration complex and lengthy.  Federal and state inheritance problems, as well as some litigation, are still unresolved.

On or about December 29, 1950 (according to the complaint herein) the executors established the trust in question by transferring to themselves as trustees principal cash in the amount of $168,387.41.  At intervals thereafter as the

assets of the estate were liquidated additional cash was added in the same fashion by the executors, thus increasing the fund to $1,368,387.41. The record before us does not show when and in what amounts the additional sums which made up that total were transferred to the trust account. At the hearing on this limited accounting, it appeared that the principal of the trust is now practically complete; further distribution to it is expected to be small either before or on the final accounting of plaintiffs as executors.

It seems to be undisputed that the estate consisted largely of security interests in 15 corporations which were either wholly owned or controlled by Armour in his lifetime. During administration these securities produced substantial income which the executors received, accumulated and at intervals turned over to themselves as trustees of Mrs. Schneider's and other trusts. The parties are in agreement that the following are distributions of such income to Mrs. Schneider's trust:

| | | | |
|---|---|---|---:|
| December | 29, 1950 | . . . . . . . . . . | $121,000.00 |
| November | 5, 1951 | . . . . . . . . . . . . . . . | 40,000.00 |
| May | 8, 1952 | . . . . . . . . . . . . . . . | 92,000.00 |
| April | 14, 1953 | . . . . . . . . . . . . | 20,000.00 |
| May | 28, 1953 | . . . . . . . . . . . | 2,000.00 |
| June | 26, 1953 | . . . . . . . . . . . . . . | 42,000.00 |
| April | 16, 1954 | . . . . . . . . . . . . | 30,000.00 |
| December | 28, 1954 | . . . . . . . . . . . . . . | 15,000.00 |
| April | 20, 1956 | . . . . . . . . . . . . . . | 15,000.00 |
| December | 31, 1957 | . . . . . . . . . . . . . . | 16,666.67 |
| | | | |
| Total | . . . . . . . . . . . . . . . . | | $393,666.67 |

It is likewise undisputed that before transferring this income from themselves as executors to themselves as trustees, they took full statutory executors' income commissions on it.

Toby Armour became 21 years of age on September 21, 1957, at which time she received the trust income which had accumulated in excess of that which had been applied to her

maintenance and education. Since that date the full net income of the trust has been distributed to her. She was married on April 19, 1958 to Stephen J. Schneider, and in accordance with the will one-third of the principal of the trust was released to her. On May 20, 1959 plaintiffs, designating themselves as trustee, filed the complaint in this proceeding, seeking approval of their first and final account with respect to the trust income paid to her and the portion of the principal delivered upon her marriage. They asked allowance also of *corpus* and income commissions. Mrs. Schneider filed exceptions to the demand for commissions on the income of $393,666.67 (referred to above) on which they had already taken full statutory commissions as *executors* before transferring that sum to themselves as trustees. In the trial court the request for commissions on the $16,666.67 of income transferred to the trust on December 31, 1957 was withdrawn when plaintiffs conceded that the amount had been turned over by them as executors to themselves as trustees *via* their books and paid out the same day to Mrs. Schneider. According to plaintiffs, this withdrawal is actually a waiver or relinquishment because if the construction of *N. J. S.* 3*A*:10–2 contended for by them with respect to the balance of the income is correct, they are legally entitled to commissions on that sum also. In any event, the claim presented for decision now is for *trustees'* commissions on income of $377,000. As has been noted, the trial court and the Appellate Division took conflicting positions as to the demand for double commissions on that sum.

The right of a fiduciary to commissions is regulated by the Legislature. The current statute on the subject, *N. J. S.* 3*A*:10–2, provides:

"On the settlement of accounts of fiduciaries acting in any capacity referred to in *Section* 3*A*:10–1 of this title [*i. e.*, executors, administrators with the will annexed, guardians, trustees under a will, etc.] their commissions over and above their actual expenses shall be computed upon the following rates:

On all income that comes into their hands, 6%, without court allowance."

The rate of commission was increased from 5% to 6% in 1957 (*L.* 1957, *c.* 80). No controversy arising out of the change is involved here. See *Blauvelt v. Citizens Trust Co.*, 3 *N. J.* 545 (1950); *National State Bank of Newark v. Nadeau*, 57 *N. J. Super.* 53 (*App. Div.* 1959); 7 *N. J. Practice* (*Clapp, Wills and Administration*) § 760, *note* 10 (1950).

Plaintiffs assert that this statute contains a clear and unavoidable mandate to allow them double commissions on the $377,000, namely, first as executors and then as trustees, because that amount of income did come into their hands as executors and was later turned over to themselves as trustees. No case is cited which establishes such a construction of the statute and our own research for a specific precedent has been fruitless.

Our courts have dealt with the problem of multiple *corpus* commissions where the will appoints the same person as executor and trustee. In such instances, where the functions of each are clearly differentiated and patently distinct services are rendered in each capacity, double exactions are proper. *In re Hibbler's Estate,* 78 *N. J. Eq.* 217, 220 (*Prerog.* 1910), affirmed opinion below 79 *N. J. Eq.* 230 (*E. & A.* 1911); *Pilney v. Everson,* 42 *N. J. Eq.* 361 (*E. & A.* 1886); *Bruere v. Gulick,* 41 *N. J. Eq.* 280 (*Prerog.* 1886), reversed on other grounds 42 *N. J. Eq.* 639 (*E. & A.* 1887). But it has been said that even where the offices are distinct if the trust springs up coincident with the executorship and the capacity in which the services are rendered is not distinguishable, no such compensation can be granted. *Parker v. Wright,* 103 *N. J. Eq.* 535 (*Ch.* 1928); *Bruere v. Gulick, supra; Johnson v. Lawrence,* 95 *N. Y.* 154 (*Ct. App.* 1884); *Clapp, supra,* § 775. That view is at odds with Chief Justice Beasley's statement in *Pitney v. Everson* that:

"In my opinion, a man must act in one or the other of such capacities, and he cannot, in his administration of any part of the property committed to him, be said to act in a duplex character,

for each act done must, in contemplation of law, be that of an executor or that of a trustee. Nor can a testator, even by use of express terms for the purpose, create an office compounded of the two distinct offices of executor and trustee, for when the requisite conditions appertaining to persons and property exist, the law itself imperatively declares that such state of affairs produces a trust." 42 *N. J. Eq.*, at *p.* 365.

And see *In re Steelman's Estate,* 87 *N. J. Eq.* 270, 273 *(Prerog.* 1917); *Brown v. Fidelity Union Trust Co.,* 135 *N. J. Eq.* 404, 408 *(Ch.* 1944). No effort need be made here to evaluate the apparent conflict beyond acknowledging the legal potency of the Chief Justice's opinion and at the same time conceding Vice Chancellor Bigelow's remark in *Brown v. Fidelity Union Trust Co., supra,* that "[i]t may be difficult to decide in some particular matter in which capacity the fiduciary acts." 135 *N. J. Eq.,* at *p.* 408.

The cases involving claims for double *corpus* commissions by a single fiduciary who has acted as both executor and trustee throw some light on the present problem. The difference in the form of statutory control of the two types of commissions, however, makes the allowance of income commissions in such cases more difficult of solution. This is particularly true when the *corpus* exceeds $100,000 because the commission then allowed, within the range prescribed by *N. J. S.* 3*A*:10–2, rests in the discretion of the court and is based upon the "actual pains, trouble and risk in settling the estate." *N. J. S.* 3*A*:10–1. Thus, if an executor-trustee does work in both capacities coincidentally it is not too hard to apportion the commissions according to the *quantum* of the effort expended in each function. *In re Rogers' Estate,* 13 *N. J.* 508, 513 (1953). Or if the services rendered are indistinguishable or inseparable, then a single commission may be allowed in the status reasonably selected by the court. See *Parker v. Wright, supra,* 103 *N. J. Eq.,* at *p.* 537; *In re Hibbler's Estate, supra,* 78 *N. J. Eq.,* at *p.* 219; *Bruere v. Gulick, supra,* 41 *N. J. Eq.,* at *p.* 283.

It is noteworthy that in the *corpus* commission cases the courts have shown a just reluctance to impose double exactions on an estate unless clearly warranted by the will. They have looked at the nature of the service rendered, *i. e.,* whether in its totality the service was single; whether it was of an executorial trustee type, that is, where the functions of executor and trustee ran side by side in the early administration of the estate with the executor while discharging his duty as such incidentally performing a trust obligation; whether the transfer of the assets from the executor to himself as trustee constituted a mere bookkeeping entry. See *Brown v. Fidelity Union Trust Co., supra; Parker v. Wright, supra; In re Steelman's Estate, supra; In re Hibbler's Estate, supra; Bruere v. Gulick, supra; In re Schliemann's Will,* 259 *N. Y.* 497, 182 *N. E.* 153 (*Ct. App.* 1932); 4 *Bogert, Trusts and Trustees,* Part 2, *p.* 398 (1948); 2 *Perry, Trusts,* 1491, *n.* 1494 (*6th ed.* 1911); 3 *Scott, Trusts,* § 242.9 (*2d ed.* 1956); Annotation 84 *A. L. R.* 667, 674–77 (1933). As was said in *Blake v. Pegram,* 101 *Mass.* 592, 600 (*Sup. Jud. Ct.* 1869):

"When the same person is both guardian and trustee, it would be a reproach to the law, and to the courts charged with the protection of such trusts, to allow him to charge full compensation in both capacities for the same service."

The duties of an executor and a trustee in law are distinct. Generally the executor has the obligation of collecting the assets of the deceased, paying the claims against the estate and distributing the residue to those entitled to it. A trustee is a person in whom some interest or power affecting the estate assets, other than those assigned to the executor, is vested by the will for the benefit of another. His duties are to hold, manage and invest such assets and pay over the income thereon as well as the principal to the specified beneficiary in accordance with the directions of the will. *In re Hibbler's Estate, supra,* 78 *N. J. Eq.,* at

p. 220; *Prall v. Tilt,* 28 *N. J. Eq.* 479 (*E. & A.* 1877); *Clapp, supra,* § 526.

As has been indicated, the Armour will established three equal trusts of the residue of the estate and provided in the case of Toby Armour that the trustees should "hold, manage, invest and reinvest [the fund] * * * collect and receive the interest, income and profits thereof" and in their discretion apply so much of the net income therefrom as would be necessary for her support and education. The balance of the income was to be accumulated until she became 21 years of age and then paid to her, after which she was to receive the full income for life, subject to the distribution to her of one-third of the principal upon her marriage. By virtue of this provision she became entitled to the income (in the manner described) from the date of the testator's death. *Berger v. Burnett,* 95 *N. J. Eq.* 643 (*E. & A.* 1924); *Restatement (Second), Trusts,* § 234 (1959). Collection of that income was the function of the trustee. If the one-third of the residuary had been allocated immediately to the trust, no question would have arisen as to which fiduciary's hands received the subsequent income. However, since the same persons were trustees and executors and the estate had to be administered, the executors who held the assets decided to liquidate them. No criticism is offered by any interested person as to the wisdom or propriety of the decision or of the length of time the process has taken. For purposes of this case the important fact is that in collecting the income, strictly speaking the executors were performing a trustee function. *In re Hibler's Estate, supra,* 78 *N. J. Eq.,* at *p.* 219; *In re Bush's Estate,* 171 *Misc.* 1013, 14 *N. Y. S.* 2d 223 (*Surr. Ct.* 1939). Thus, in handling the estate assets, and liquidating them, and at the same time collecting the income thereon, and in allocating *corpus* sums on their books to the trust at intervals, the administration of the estate and the trust ran on together, each operation an incident of the other. Plaintiffs assert that they received the $377,000 of income

involved here as executors from assets held by them as executors, accumulated it as such and took full executors' commissions on it before transferring it on their books to themselves as trustees. As we have suggested, collection of the income was more closely related to the trustee function. The duty of the trustee was to collect the income and allocate it as the will directed. That duty should be considered as a unit for commission purposes, *i. e.*, a single service in the administration of the trust for which a single allowance of commissions should be made. *Parker v. Wright, supra,* 103 *N. J. Eq.*, at *p.* 537. Undoubtedly, the concurrent performance of executor and trust obligations in this case is one kind of situation which prompted the footnote to section 775 of Judge Clapp's work on Wills and Administration that "[i]n such a case it is 'the settled practice to allow only one 5% commission on income." At *page* 248, *n.* 3. True, no cases are cited in support of the comment, but the author's practical and official experience in the field makes it worthy of consideration.

It matters not how the fiduciary regarded the activity or accounted for it. The law looks to the substance and not to the form. For example, in *Brown v. Fidelity Union Trust Co., supra,* Vice Chancellor Bigelow noted:

"When the defendant company, on March 1, 1929, two months after testator's death, paid the life beneficiary of the residuary trust $1,000 of income, *it was the act of the trustee,* although the payment was shown in the Orphans Court in the account called the final account of the executors. And three years later, March 26, 1932, the payment of $3,575 on account of [the] testator's debt on a mortgage bond, *was the act of the executor and not the trustee.* The functions of executor and trustee, while separate, are so often intertwined, that counsel frequently entitle an account in both aspects." 135 *N. J. Eq.*, at *p.* 409. (Emphasis added)

See, also, *In re Steelman's Estate, supra; In re Hibbler's Estate, supra; Pitney v. Everson, supra.*

In this connection *In re Union Trust Co. of New York,* 25 *Misc.* 584, 56 *N. Y. S.* 149 (*Surr. Ct.* 1898), is of some

pertinence. There the testator's will directed that separate sums and the residue be invested for named persons by his "executor and trustee" and a fixed amount paid to each one annually either from principal or income until each fund became exhausted or the beneficiary died. During the administration of the estate by the executor income was realized and upon the filing of the final account income commissions were sought by the executor. The court said that the funds referred to in the will constituted trust funds, "intended by the testator to be * * * distinctively and separately managed by the executor as trustee" and as to the income from such funds "which the accountant has in its hands, and which it is about to retain or transfer to itself as trustee, I do not think that it is entitled to any commissions thereon as executor. There is no doubt that the testator never contemplated or intended, in his creating trusts having for their object the collection and application of the income by the trustee exclusively, in its distinctive capacity as such, that the latter should receive commissions upon the same as executor in addition to those to which it will become entitled as trustee." Also in *In re Tucker's Estate, 29 Misc. 728, 62 N. Y. S. 1021 (Surr. Ct. 1899)*, the testator gave the residue of her estate to her executors and trustees "as trustees" to be divided into three parts and to apply the income of each of the parts to the use of certain beneficiaries for life. On the filing of the final account of the executors double commissions were demanded on the income in their hands. The demand was refused because it was the manifest intention of the testatrix that the income of her estate should be received by the trustees directly.

Appellant raises no issue as to the propriety of plaintiffs' action in taking the income commissions as executors rather than as trustees. Since the rate of compensation is the same for each capacity, she objected only to the payment of a double commission, the right to which plaintiffs claim, in effect, arises from the mere book entry indicating a handing over of the same income to themselves as trustees. Her

position seems to be that plaintiffs made their election to accept compensation as executors and they should be bound by it. *Cf. In re Hibbler's Estate, supra; In re Piel's Will,* 259 *App. Div.* 1047, 21 *N. Y. S.* 2d 25 (*App. Div.* 1940), affirmed 284 *N. Y.* 669, 30 *N. E.* 2d 609 (*Ct. App.* 1940).

The Appellate Division felt obliged to apply the statute, *N. J. S.* 3A:10–2, according to its literal terms. Since the income involved had come into the executors' hands originally and was then turned over by means of a book entry to themselves as trustees whereupon they, in the capacity as trustees, decided how much thereof should be paid out for maintenance and education of appellant and how much should be accumulated, the court concluded that it was mandatory to give commissions on that same income in each capacity. In our judgment, such view sacrifices substance to form and ignores the spirit and internal sense of the statute. As we have seen, collection and distribution of the income as dictated by the will was a trust function from the death of the testator. That function is a composite one, a single service for which a single commission is warranted. It is unreasonable to believe the Legislature intended to permit that composite function to be fractionized, and if part of it is performed by the fiduciary in his cloak as executor and the remainder in his cloak as trustee to grant commissions on the same income in each capacity. Such a conclusion would put a premium on delay in the administration of estates by executors who are also the trustees. The longer they held the assets and received the income, the greater their commissions would be as executors and then by virtue of a simple bookkeeping note they would acquire an absolute right to a duplicate amount as trustees. Acceptance of such a basis for double recovery would indeed be a reproach to the law. Rather, we should treat that as done which ought to be done. That is, when, as in this case, an executor collects income which must be paid from the death of the testator as required by a trust, he should be regarded as acting *qua* trustee in doing so. *Cf. In re Hibbler's Estate, supra,* 78 *N. J. Eq.,* at *pp.*

219, 220; *Waltzinger, New Jersey Probate Practice*, 225 (1931). In that way one full commission will be paid for one entire trust service. In the absence of any provision in the statute for apportionment of the 6% compensation on the basis of partial performance of the service in each capacity by the fiduciary no other rule will do equity and justice or satisfy what we conceive to be the underlying legislative intention in situations like the present. See *Bogert, supra,* at *p.* 398.

For the reasons stated, we conclude that only one commission is allowable on the income in question. Since it was taken by plaintiffs as executors, no further award thereon can be made to them as trustees. Accordingly, the judgment of the Appellate Division is reversed and that of the trial court is reinstated.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.