## EDWARD BLAKE & another *vs.* ISABEL PEGRAM.
## EDWARD BLAKE, guardian, *vs.* SAME.

Upon the settlement of an account by a trustee or guardian, a former account may be opened, by leave of the court, as to matters of substance as well as of form, although an appeal from such former account was taken to this court and here determined, and although no application has been made to the probate court for the opening of the former account other than is involved in the objections to the allowance of the later account.

After two co-trustees rendered an account one of them died, and a successor was appointed in his place, and subsequently, with the surviving trustee, rendered a further account. *Held,* that in the settlement of this account the former account might be opened by leave of court; that the surviving trustee would be responsible for any improper disposition of

the trust property by him, although in the advantages of such disposition the deceased trustee shared; but that the new trustee would be responsible only for the property that came into his hands, unless he failed to take proper measures to secure the *cestui que trust*

A master to whom a trustees' account was referred found that a certain sum should be allowed them as compensation for all their special services in certain matters. *Held*, that he ought not to allow any charges in the account for special services in the same matters without proof that they were rendered, although the order for reference directed that the account, which had been reopened after being allowed, should be deemed *primâ facie* correct.

When a trustee's account is disputed by one only of the *cestuis que trust*, she will be entitled to the benefit of any correction only to the extent of her proportion of interest in the trust estate.

A guardian who for many years has had a large surplus of his ward's income in his hands, and in his account has charged himself therewith and with interest thereon, but refuses to disclose what use he has made of it, will be allowed no commission on his ward's income received by him.

The question whether furniture had been given to B. by A. who had a life interest therein with power of absolute disposal, was referred to a master who reported that A., shortly before her death, " expressed her anxiety" to a third person, in the absence of B., "that B. should have the furniture," and said "that she gave all the furniture to B. and desired" such person "to take care of it for B.," but that there was no delivery, actual or symbolical, of any part of the furniture. The master found that there was no gift. *Held*, that the finding ought not to be disturbed.

When in the settlement of a trustee's account he is charged with sums not included in the account, interest is to be computed on such sums as if they had been charged when they ought to have been charged.

A trustee or guardian will not be allowed to charge the estate of his *cestui que trust* or ward in his hands with any part of the expenses of a controversy on the settlement of his account, if such controversy was occasioned in great measure by his own fault.

APPEALS by Isabel Pegram from decrees of the probate court for Suffolk, which purported to have been made *pro formâ*, accepting and confirming accounts rendered by Edward Blake and John A. Loring as trustees under the will of Fitzhenry Homer, and by Blake as guardian, under said will, of the appellant, the testator's daughter. The causes were committed to a master who reported, among other matters, the following facts :

The testator died June 1, 1856, leaving a widow and two children, a daughter Josephine then the wife of Henry Bedlow, and the appellant. By his will he gave to his widow, Blake, and Edward Codman the greater part of his estate, to hold on certain trusts, for the benefit of the appellant and Mrs. Bedlow, and appointed the widow and Blake the appellant's guardians. The widow died November 15, 1856. Codman and Blake rendered their first account as trustees which was allowed by the probate

court March 15, 1858. Codman died in 1862, and Blake rendered his second account, as sole surviving trustee, which was allowed April 27, 1863. Loring was then appointed in the trust with Blake, and they rendered their account as trustees, coming down to January 1865, which was allowed January 22, 1866. Blake, after the widow's death, remained sole guardian of the appellant until she became of age, November 4, 1864. He rendered a first account as guardian, which was allowed March 15, 1858, and his second and final account, which was allowed January 22, 1866. The last account of the trustees and the last and final account of the guardian were allowed without examination and *pro formâ*, and these appeals were duly taken. Each successive account brought forward the balance from the preceding account. On the first account of trustees and guardian, William Minot, Jr., was, on his own petition, appointed guardian *ad litem* of the appellant. He appeared and put in an answer. There was an examination of both accounts. The guardian *ad litem* asked the court to have the account corrected in one particular; the correction was ordered, Bedlow appealed therefrom, and the order was reversed in this court. *Bedloe* v. *Homer*, 16 Gray, 432.

The trustees charged and received a commission of five per cent. on the income received, except that when Blake was sole trustee he received four per cent. During the widow's life a house on Beacon Street in Boston, belonging to the testator's estate, was exchanged with Benjamin B. Muzzey for an estate of Muzzey's on Howard Street which was conveyed to the trustees, and which they let on a long lease to Franklin Evans. For the sale of the Beacon Street house it was necessary to procure a resolve of the legislature. Both the widow and Muzzey died before the deeds were passed. The trustees in their first account charged a commission of one per cent. on the value of both the estates exchanged which was $173,750, also $318.20 for effecting the lease.

The account also contained the following charges: " Professional services of E. Blake about sale of house on Beacon Street, &c., $300. Professional services of E. Blake about resolve for sale of house, hearing before William J. Hubbard on claim or claims of interest against Muzzey's estate, $200. Services of trustees about

resolve, negotiations with James Lawrence and Sidney Bartlett, and commissions on money received and paid out, about sale of house and purchase of Howard Street estate, $1000. Services of trustees about claim of Franklin Evans for $1500 in reference to estate in Howard Street, submitting same to referees and attend-ing hearing, $150. Sundry professional services of E. Blake, about hearing before referees of claims of Franklin Evans for $1500; attendance on probate court about Evans's account and petition to transfer stock, $125."

Blake, as guardian, charged a commission of five per cent. on the income received, being nearly all the same money on which the trustees also charged a commission of five per cent. He used his ward's money and made no investments for her.

The master's report is set forth more at length 101 Mass. 592.

The appellant objected specifically to all the items of charge above set forth, except that of the commission of five per cent. to the trustees on income received by them.

After the decision reported in 101 Mass. 592, finally disallow-ing the charge of one per cent. on $173,750 and the charge of $318.20, and also disallowing the charge of $1000 as made, an order was passed, of which the material parts were as follows:

" It is ordered and decreed by the court, that the report of the master be recommitted to him for a more specific statement of facts touching the points in dispute, and of the items in the several accounts in respect of which objections are made or errors alleged. And to hear the parties and report upon the errors alleged by the appellant to exist in the previous accounts set-tled in the probate court, particularly the account of said Blake as guardian, and the joint account of said Blake and Edward Codman as trustees, rendered and allowed in said probate court, March 15, 1858, so far as said errors have been assigned by the appellant in her specifications thereof filed in this court, and so far as the same have not already been considered and finally passed upon by this court.

" The decrees of the probate court allowing said accounts are to be regarded as *primâ facie* evidence that the same are correct, and the appellant will be required to show that the alleged errors

are such. The appellant will be entitled to the explanations of the accountant in relation to all matters relating thereto: and to the production of all books upon which entries have been made or accounts kept by him of his receipts, investments, payments, expenses or charges in or about the management of the several trusts, or of the property or money belonging thereto or derived therefrom; and also to the production of all papers relating to the same; also to interrogate said Blake, orally before the master, or in writing, if he shall so elect, with the leave of the master, in respect to all of said matters and as to the management of said trust property and funds and the disposition of the income thereof, and to have full answers thereto.

" The master may, if requested, ascertain and state whether the accountant has credited the estates in his hands with interest upon moneys alleged to have been used by him, or to have remained in his hands uninvested, or to have been improperly invested, or otherwise ; and at what times, at what rate, and to what amount such credits have been given. He may also hear the accountant and his evidence as to any services actually rendered by him in the execution of his said trusts, for which no charge has been made by him in his said accounts except the general charges which have been disallowed by this court ; and if such have in fact been rendered, for which adequate compensation is not provided by the charges remaining in said accounts, he may report specifically what those services were, and what, in his judgment, would be a reasonable and proper compensation for the same.

" If the master shall find any errors or omissions in said accounts, or that there ought to be any corrections thereof in any matter referred to by said several specifications, he shall report what charges or credits are proper to be° made in the final accounts of said accountant, in order that such correction may be properly made. The master may also report, if requested, any facts, not stated in his former report, bearing upon the question whether the charge for commissions on income in the first account as guardian, and the charges relating to the exchange of real estate in the trustees' account, were in fact heard and determined

by the probate court as matters in dispute between the parties to these proceedings; but this shall not prevent the master from hearing the parties upon the several matters hereinbefore named, as if the same were open for such hearing by leave of the court."

The material parts of the master's additional report were substantially as follows :

The services of the trustees in effecting the exchange of the estates were special services of a valuable character, such as were not compensated by the commission of five per cent. on income. " For all the special services connected with and growing out of the sale of the house, the purchase of three fourths of the Howard Street estate, the sale of one fourth of the Howard Street estate, the making of the lease to Evans, the procuring of the resolve, the negotiations with Mr. Bartlett and Mr. Lawrence, the receiving and paying out of money, the master is of opinion that $700 would be a reasonable compensation.

" The trustees have charged for services about submitting claims of Franklin Evans to referees and attending the hearing $150. This charge is allowed, because it was not proved that the charge was excessive, and because they were special services.

" Blake has charged for professional services about sale of house on Beacon Street, $300 ; about resolve for sale of house and hearing before William J. Hubbard, Esquire, as to claims for interest. against the estate of Benjamin B. Muzzey, $200; and about hearing before referees of claims of $1500 of Franklin Evans, attendance before the probate court about the account of Franklin Evans, administrator, and petition to have stock transferred and paid over, $125. Blake testified that the first charge was mainly for services performed about the sale of the house, before the decease of Mrs. Homer. He did not specify the services, and it did not appear how professional service was necessary. But as services were performed, and the charges are not proved to be excessive, they are allowed.

" At the hearing before the probate court, the answer of Minot, the guardian *ad litem,* was read and somewhat discussed. Before the hearing, Minot had set down on paper in several columns, the items of five per cent. commissions on

income; of one per cent. commissions on sales; of one per cent. on capital received; commission on lease; charges for general services; and charges for professional services. This paper was read at the hearing before the judge. The items not admitted by the answer were brought before him for his consideration. The paper was produced, and had indorsed on it in pencil, by the judge, these words: ' Account allowed as to compensation and legacy of $5000 held to be invested according to legacy.' William I. Bowditch was called as a witness by the accountant, and examined in the court of probate as to the reasonableness of the charges. The guardian *ad litem* testified that he thought he had no conference with his ward or any one in her behalf ; that he called no witness, made no argument and took no appeal; and that he presumed he examined the guardian's account, but had no recollection of its being the subject of special discussion. Blake testified that the guardian's account was before the probate court for settlement at the same time with the trustees' first account ; that he called the attention of the guardian *ad litem* to the charge of commissions therein, saying he wished it settled for that account and as a precedent for subsequent accounts."

The master disallowed sundry other small charges by the trus tees, not now necessary to state particularly, and found that the account of Blake and Loring, trustees, was to be corrected by adding to the total of receipts the difference between the balances in the accounts rendered by Codman and Blake and in the accounts as they should have been rendered, and the interest thereon computed with annual rests to January 1, 1865, allowing commissions of five per cent. on such interest.

" In his first account as guardian Blake credits himself with $2400, invested October 12, 1857, in a mortgage of one Morgan, and with $2032 invested, January 16, 1867, in a mortgage of John Baxter. These were mortgages taken by Blake to secure the purchase money of his lands which he had sold to the mortgagors. They were both made June 1, 1857, were on five years, and were taken to secure the sums at which they were credited in the account. Blake wrote his name on the back of the mort

gage notes, and before filing his account wrote over his name a waiver of demand and notice. The notes were indorsed by ' Edward Blake ' to ' Edward Blake, guardian,' but the mortgages were never assigned. November 3, 1857, six months' interest was indorsed as received on the first mentioned mortgage note. Six months' interest was indorsed as received on the Baxter note November 3, 1857, and again on August 9, 1858, and nothing after that date. Blake charged himself with the interest accrued on this mortgage as it became payable, whether paid or not by the mortgagors. He foreclosed both mortgages in his own name, and afterwards sold the estates ; the Morgan estate for $2200, December 22, 1865, and the Baxter estate for $2250, April 2, 1866. Upon these facts the master is of opinion that the mortgages were not the property of the ward, unless she elects so to consider them. She declines to regard them as investments of her money. But as the mortgages have been foreclosed, and as Blake has received the money and must account for it, the question is not material. No investment was made for the ward other than in these two mortgages until July 12, 1864, when the money in the guardian's hands, over and above what he claimed to have invested in the two mortgages, was $18,500. At this time, when he began to make investments for his ward, gold was worth in the market $2.71 in currency.

" Blake testified that it was his practice at the end of each quarter to ascertain the excess of receipts over expenditures and charges, and allow interest on the balance ; and at the end of each year to charge himself with the accrued interest and add it to the amount received over and above the amount expended and charged during the year, and allow interest on that sum. A very large part of the income was received by him at the beginning of the quarter.

" He further testified that he kept a cash book during the larger part of the time of his guardianship ; that he entered in this book all his receipts and payments and investments ; that at the end of every month he entered in this book to his ward's credit or debit the balance of receipts or payments on her account during the month ; that ordinarily there were credits ; that this

book was balanced monthly; and that there were no other entries pertaining to his ward or her funds. He was called upon by the appellant to produce this book. He offered to produce it, first sealing up all but these entries. This offer was declined. And the master, after examining the book and finding that moneys received for the ward were entered in it, and that moneys were charged to investments, ruled that the appellant was entitled to examine the book as it was. Blake refused to comply with the ruling, and the book was not produced. During the guardianship, Blake kept an account in detail of all receipts and payments in a separate book, which was produced at the hearing whenever called for. The refusal of the guardian to permit an examination of his cash book except in the manner offered by him, he placed on the ground of legal right, denying that he had invested his ward's money so as to make a profit by it. He charged himself with interest on her funds, as already stated.

" The appellant claimed that a credit of $1855.96, proceeds of sale of furniture, should be transferred from the trustees' account to the guardian's account, and contended that the furniture had been given to the ward by her mother. The testator, by his will, gave his wife the furniture for her life, and ' empowered her to make such gifts as she may think proper to my daughter Isabel and the other children, should any other be born, of any articles of household furniture, plate or other like property, left to her during her lifetime as above, and such gift or gifts may be made by her at such times as she may think best.' Not long before her death Mrs. Homer told Evans that she thought she could not long survive, and expressed her anxiety that the appellant should have the furniture ; and a day or two before she died she said to Evans that she gave all the furniture to the appellant and desired him to take care of it for her. This was the only evidence relied upon as showing that Mrs. Homer had given the furniture to the ward. The appellant was not present at either of the interviews between Evans and Mrs. Homer, and there was no delivery, actual or symbolical, of the furniture or any part of it. The master is of opinion that there was no gift, and that the trustees took the furniture as part of the testator's estate.

" The guardian has charged a commission of five per cent. on the income received by him in his first and second accounts.

The guardian did not have the personal care of the ward, having put her in the charge of Mrs. Bedlow, which the master found was the best thing he could have done.

The master found that the commission of five per cent. charged by the guardian was excessive, and that he should be allowed a commission of two and a half per cent.

The master also reported that interest should be computed on the difference between the balance of the guardian's account as it should have been rendered and as it was rendered, with annual rests till November 1864, allowing commissions on the interest so made up.

Blake excepted to the master's report because the former accounts could not be opened, both on the ground that they had been passed upon by the probate court and on the ground that the parties to the trustees' accounts were different, and because the master ought not to have disallowed any of the charges either of the trustees or the guardian. Loring excepted because the master found that the account of himself and Blake ought to be corrected by adding to the amount of the receipts, the amount of charges improperly made before he became co-trustee with Blake. The appellant excepted because the allowance of $700 for special services was excessive, because Blake's claim for professional services should not have been allowed, because no commission should have been allowed to Blake as guardian, and because the proceeds of the sale of the furniture should have been credited to her on the guardian's account.

The case was reserved by *Colt,* J., on this additional report of the master, and the exceptions thereto, for the determination of the full court.

*C. B. Goodrich,* for the appellees, to the point that the accounts ought not to be opened, cited *Granger* v. *Bassett,* 98 Mass. 462 ; *Bedloe* v. *Homer,* 16 Gray, 432 ; *Stetson* v. *Bass,* 9 Pick. 27 ; *Boynton* v. *Dyer,* 18 Pick. 1 ; *Saxton* v. *Chamberlain,* 6 Pick. 422 ; *Field* v. *Hitchcock,* 14 Pick. 405 , *Wiggin* v. *Swett,* 6 Met. 194 ; *Harvard College* v. *Amory,* 9 Pick. 446, 463 ; *Baylies* v. *Davis,* 1 Pick. 206 ; *Stearns* v. *Stearns,* Ib. 157

*C. F. Choate*, for the appellants.

WELLS, J. By the decree, following the decision in 101 Mass. 592, this case was recommitted to the master with authority, among other things, to report " any facts, not stated in his former report, bearing upon the question whether the charge for commissions on income in the first account as guardian, and the charges relating to the exchange of real estate in the trustees' account, were in fact heard and determined by the probate court as matters in dispute between the parties to these proceedings." It was also ordered that this inquiry should not prevent the master from hearing the parties upon the several matters in controversy, and referred to him, " as if the same were open for such hearing by leave of the court."

The purpose and effect of these orders was to enable the appellees to present at this hearing both the question whether the former accounts were open as a matter of right, and that of the propriety of their being opened by leave of the court, thus given. Subject to this revision, the former accounts were allowed to be opened in respect of the matters designated by the decree.

It is not necessary to consider minutely the effect of the additional facts reported and relied on to show that these matters were heard and determined by the probate court at the time the former accounts were allowed ; because we are all satisfied that, if they could not be brought in question without leave of the court, that leave ought to be given, and was properly given. There was in reality no controversy or discussion in the probate court upon these objectionable charges ; and whatever assent the guardian *ad litem* gave to the accounts was given without any communication with the ward, and was a mere formality.

It is contended that, under this provision of law, (Gen. Sts. c. 98, § 12,*) former accounts can be opened only for the correc

---

* This section provides that " upon the settlement of any account by an executor or administrator, all his former accounts may be so far opened as to correct any mistake or error therein ; except that any matter in dispute between two parties, which had been previously heard and determined by the court, shall not be again brought in question by either of the same parties without leave of the court."

tion of mistakes and formal errors, such as errors of statement or computation, omissions, or repetition of charges. But it is manifest, from the terms of the exception, that all "matters in dispute between two parties" are equally the subject of such revision, whether they are matters of substance or of form merely. It is only when such matters have been once heard and determined, that formal leave of the court is required.

It is further contended that the right and power thus to open former accounts is limited to cases where the same persons continue to represent the trust. Such is not the purport of the decision relied on for this position. *Granger* v. *Bassett*, 98 Mass. 462. The right depends upon identity of the estate or trust, and not of the accountants.

The consequences of a correction, when made, will depend of course upon the question whether the persons then representing the estate or trust are legally responsible for the previous maladministration or wrong disposition of the fund. In this case, the accountant Blake was and is responsible for the property which came into his hands from the time of the original appointment. *Ames* v. *Armstrong*, 106 Mass. 15. We find nothing in the facts reported, which would exempt him from liability for any improper disposition of any part of the estate or its income, although that disposition consisted in an excessive appropriation for payment of the charges of the trustees, in which his deceased co-trustee shared. The remedy of the *cestui que trust* may be had by a correction of the account, leaving the surviving trustee to his claim over against the estate of his deceased associate. The new trustee will not, of course, be held responsible for funds which have never come to his hands or within his control, unless he neglects to take proper measures to secure the rights of his *cestui que trust*. Upon the correction of the account, the entries will show the nature of the credit, so that the extent of the responsibility of the respective trustees will be made readily to appear.

Another objection urged by the appellees is, that the accounts can be opened only by proceedings to set aside the decree allowing the same, upon an application to be first made in the probate court. This position is coupled with another, that the former ac

count of the trustees was finally settled in this court, (see *Bedloe* v. *Homer*, 16 Gray, 432,) and that the probate court has no authority to set aside or open a decree so rendered, citing *Baylies* v. *Davis*, 1 Pick. 206. But that decision is not applicable, among other reasons, because it had reference to a proceeding entirely different from this. The account sought to be set aside or opened was a final account. The other decisions, cited in support of the position that matters once passed upon and allowed in a probate account are settled conclusively, unless mistake or fraud is shown, were before the adoption of the Revised Statutes, wherein the provisions under which these accounts have been opened were introduced as a new section. This court cannot, it is true, act otherwise than as an appellate tribunal. But the objections to the allowance of these accounts, as originally filed in the probate court, were, substantially, applications to have the former accounts reopened. The allowance of the accounts in that court, without hearing the objecting party, was a denial of leave so to open them, which gives to this court jurisdiction to grant such leave, at least to the extent covered by the reasons of appeal as assigned.

In the account of the trustees, besides the charges disallowed by the court upon the former hearing, the master has now rejected several items of charge, not of very large amount. No exception is taken to these in detail; and no controversy is understood to be made here in regard to them, otherwise than upon the general grounds which we have already considered.

The appellant objects to the allowance by the master of $700 for special services in relation to the exchange of estates; and also to the allowance of three charges, amounting in all to $625, for the professional services of Mr. Blake. We are not prepared to hold that a lawyer, acting as trustee, and having occasion to perform professional services in behalf of his trust, may not be allowed in any case to receive from the trust fund the usual professional compensation for such special services. But such charges where the lawyer is his own client are open to serious question, because of the liability to abuse, or, at least, to the suspicion of abuse. They require the most careful scrutiny, and should be

left in no doubt, either as to the reasonableness of the charge or the propriety of the service. The three charges were allowed apparently upon the testimony of Mr. Blake. Of this testimony, and his finding thereon, the master reports : " He did not specify the services, and it did not appear how professional service was necessary. But as services were performed, and the charges are not proved to be excessive, they are allowed." If these charges stood alone, we might not disturb the allowance by the master; because, by the terms of the order of recommitment, the previous allowance by the probate court was to be regarded as *primâ facie* evidence of the correctness of the accounts, except so far as dis- allowed by the former decision.

There were however in the account several charges, not very specific, relating to the exchange of estates, among them the following : " Professional services of E. Blake about sale of house on Beacon Street, &c., $300. Professional services of E. Blake, about resolve for sale of house, hearing before William J. Hubbard on claim or claims of interest against Muzzey's estate, $200. Services of trustees about resolve, negotiations, &c., about sale of house and purchase of Howard Street estate, $1000." The last charge was rejected by the court, and directed to be reëxamined, among other reasons, because it appeared to cover the same services as the other two charges. By the order of recommitment, the master was authorized to " hear the accountant and his evidence as to any services actually rendered by him in the execution of his said trusts, for which no charge has been made by him in his said accounts except the general charges which have been disallowed by this court ; and if such have in fact been rendered, for which adequate compensation is not provided by the charges remaining in said accounts, he may report specifically what those services were, and what, in his judgment, would be a reasonable and proper compensation for the same." The master has reported all the services of which evidence was offered by the accountant ; and his conclusion thereon, as far as relates to the exchange of estates, is as follows : " For all the special services connected with and growing out of the sale of the house, the purchase of three fourths of the Howard Street estate, the sale of one

fourth of the Howard Street estate, the making of the lease to Evans, the procuring of the resolve, the negotiations with Mr. Bartlett and Mr. Lawrence, the receiving and paying out of money, the master is of opinion that $700 would be a reasonable compensation." We are of opinion that this finding and allow-- ance leaves no room upon which the other two charges can be allowed to stand. The purpose of the investigation was to enable the accountant to show that " the charges remaining in said accounts " were not adequate, as compensation for all the special services actually rendered. To do this, it was incumbent upon him, as the foundation of any claim for further compensation, to show the character, extent and value of the services for which the charges remaining in the accounts were made. He has furnished such evidence as he saw fit, in regard to the services actually rendered, for which the master has allowed him full compensation. In the face of these considerations, he is not entitled to retain the other charges, relating to the same matters of service. The master, apparently, did not feel at liberty to reject the charges from the account, under the provisions of the order that the allowance by the probate court was to be regarded as *primâ facie* evidence of their correctness. But we think the statements of the report will not justify the retention of these charges in addition to the $700, found by the master to be a reasonable compensation for all the services disclosed, in relation to the same matters of charge.

For like reasons, there being a charge allowed for " services of trustees about claim of Franklin Evans for $1500 in reference to estate in Howard Street, submitting same to referees, and attending hearing, $150," we are of opinion that the further charge of $125, for professional services of Mr. Blake in relation to the same matter, should not be allowed, without distinct proof of the necessity or propriety, as well as the reasonableness of the charge. Upon the report of the master, it appears that the accountant failed to make such proof, and made no satisfactory disclosure in regard to it, although examined upon the subject. By the terms of the finding upon which the general allowance of $700 is made by the master, it covers the services for which the three special charges amounting to $625 were made by the accountant. That

amount being included in the other, should not remain as an additional charge in the account.

The exceptions to the three items of charge for professional services, amounting to $625, are therefore sustained, and those charges disallowed. Those to the allowance of $700, as reported by the master, are overruled, and the accountants are allowed to enter that charge in their final account.

This controversy is with one only of the two *cestuis que trust*, and she will of course be entitled to the benefit of the corrections made in the account, only to the extent of her proportion of interest in the estate. The other party interested was of age when the account was first settled, and her rights depend upon other considerations than those presented here. The adjudication affects only the adjustment with Mrs. Pegram of her share of the estate.

As to the guardian's account, the charge of five per cent. upon all income received was disallowed at the former hearing, for reasons then stated. The accountant was allowed to show, to the satisfaction of the master, what his services in that capacity were, and what would be a reasonable compensation therefor. From the report, it appears that for several years there was a considerable surplus of income, which he neglected to invest specially in the name and for the benefit of his ward, but deposited with his own money, and used indiscriminately as his own and for his own purposes. Some four or five thousand dollars of it was represented by notes taken by him for land which he had sold. These notes he indorsed to himself as guardian ; and he credited to his ward's account the interest as it accrued upon them, whether in fact paid or not. But the mortgages were retained in his own name ; and although foreclosed by him and the lands afterwards sold, he declined to account for the proceeds, otherwise than by crediting the amount of the principal of the notes, and refused to disclose whether or not he had made any profit from the foreclosure and resale of the lands.

Besides these investments, the surplus income in his hands had accumulated in July 1864 to $18,500. Interest was credited annually upon the balances appearing at the end of each quarter.

The appellant claimed to be entitled to the profits, if any were made beyond the interest, from whatever use her money had been appropriated to. In order to ascertain whether such profits were made, the accountant was called upon to exhibit his books of account, and to disclose the mode in which the money had been used or invested. This he declined to do, denying the right of the appellant to investigate his private affairs, or to inspect his personal accounts.

The appellant contends that, against a party who thus refuses to disclose the use he has made of his ward's money, it is fairly to be presumed that he has derived profits from its use, sufficient at least to compensate him for the care of it, so as to deprive him of the right to charge other compensation; and that this presumption is especially strengthened when, as in this case, the money was mostly received at a time when currency and gold were equivalent, or nearly so, and paid over in currency or specially invested for the ward after the currency had depreciated to less than one half the value of gold. The court adopt this position of the appellant, and hold that the guardian is not entitled to charge any commission in this account.

This disposes of all the exceptions upon both sides, save one in regard to the proceeds of certain furniture sold, and credited in the trustees' account. The appellant claims that the whole should have been credited to her, on the ground of a gift from her mother, who had a life interest, with power of disposal.

Upon this subject, the master finds that, although there was an expressed intention or desire on the part of Mrs. Homer that Isabel should have the furniture, yet " there was no delivery, actual or symbolical, of the furniture or any part of it." He therefore finds that there was no gift, and that the trustees took the property in the furniture, under the provisions of Mr. Homer's will. This was a pure question of fact, which the master was competent to find conclusively; and we discover nothing in the report by which his finding can be impeached. This exception therefore is overruled.

The result is, that the accounts must be settled according to the master's report, deducting from the trustees' account the three

charges for professional services, amounting to $625, and deducting from the guardian's account the allowance of two and a half per cent. commissions. When thus adjusted, the balances will be brought forward with proper credits of interest up to the present time.                                                        *Decrees accordingly*.

Upon a hearing before *Wells*, J., for framing the final decrees, after the foregoing decision, the question arose whether simple or compound interest should be computed upon the amount of the corrections in the accounts. After conference by him with the whole court, it was ordered that interest be computed as if the corrections were made in the account of the years respectively in which the overcharges were made; thus giving compound interest until the close of the annual accounts, and simple interest since.

The appellee also asked, at this hearing, to be allowed to charge the funds in his hands for his expenses incurred in the controversy, or for some portion thereof. But upon like conference it was considered that, as the controversy was occasioned in great measure by his own fault, he should not be allowed to charge any part of the expenses to the trust estate or to his ward.