EDWARD R. LEMBO, special administrator, *vs.*
JOHN L. CASALY.

Middlesex.    March 15, 1977. — April 25, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Trust,* Trustee's compensation, Counsel fees.

A trustee, who was also an attorney, was allowed to charge the trust
for his services and disbursements in examining the title to mort-
gaged real estate held by the trust and preparing the closing papers
in connection with a loan from a bank to the trust. [243-245]

A trustee, who was also an attorney, was entitled to charge the trust
for legal services rendered in defending two corporations, all the
stock of which was held by the trust, and for his services and the
services of his employees in managing the affairs of one of the cor-
porations where neither the trust nor the sole income beneficiary
was injured by the charges. [245-247]

BILL IN EQUITY filed in the Probate Court for the county
of Middlesex on April 7, 1966.

The case was heard by *Freedman,* J., on a master's
report.

*Gary F. Casaly* for the defendant.

*Irving Karg* for the plaintiff.

GRANT, J.   This is a proceeding in equity in a Probate
Court by which the original plaintiff (plaintiff),[1] as the
settlor and sole beneficiary under an inter vivos trust dated
October 8, 1964, sought an accounting with respect to vari-

_____

[1] The original plaintiff, Angus J. McPherson, died following the fil-
ing of the briefs on the appeal in this matter, and we allowed the
substitution of the special administrator of McPherson's estate as the
party plaintiff. Mass.R.A.P. 30(a), 365 Mass. 878 (1974). There has
been no substitution of counsel, or any request by the special ad-
ministrator for leave to file a different brief. Accordingly, our opinion
in this case will proceed as if McPherson were still the party plaintiff,
but all references to "the plaintiff" are to be taken to include and
bind McPherson's estate.

Lembo *v.* Casaly.

ous amounts which the defendant, an attorney at law, paid himself out of the assets of the trust[2] during the period (October 8, 1964, through March 31, 1967) he served as the sole trustee of the trust. The case was referred to a master who, in his substitute report, made findings of fact concerning the defendant's administration of the trust during the period in question, as well as recommendations with respect to the allowance (or not) of numerous items which appear to have been disputed by the parties during the course of the hearings held pursuant to the relevant orders of reference. The plaintiff filed objections. The judge sustained six of those objections[3] and entered a judgment which had the effect of surcharging the defendant in a sum equal to the aggregate of the six items objected to by the plaintiff. The defendant appealed.[4]

We summarize certain of the subsidiary findings made by the master, as well as certain of the relevant provisions of the trust, a copy of which appears in the record.

The chronology of events commences in the summer of 1964, when the plaintiff owned numerous parcels of land, all the capital stock of Holliston Realty Co., Inc. (Holliston), and all the capital stock of Pinecrest Country Club, Inc. (Pinecrest). Holliston had extensive real estate holdings, including both developed and undeveloped lots; the principal asset of Pinecrest was a thirteen hole golf course. The plaintiff was in poor health and in a somewhat pre-

---

[2] It is not entirely clear from the record before us that all the disputed items discussed in our opinion were actually paid by and to the defendant out of the assets of the trust, but counsel have argued the case (both in their briefs and orally) on the basis that all such items were so paid. Accordingly, our opinion will proceed on the same basis.

[3] The judge actually sustained seven of the plaintiff's objections, but the conclusions we reach with respect to the six objections discussed in our opinion make it unnecessary to discuss the seventh objection.

[4] The defendant also appealed from the judge's denial of his motion that he be allowed his counsel fees and expenses in connection with his defense of the present litigation, but the defendant has not argued the possible impropriety of that denial before us, and we consider the point waived. Nor do we consider any of the plaintiff's objections which were overruled, because the plaintiff took no appeal. *Aronson* v. *Scopa,* 4 Mass. App. Ct. 821, 822 (1976).

*Lembo v. Casaly.*

carious financial condition. His total assets were worth approximately $1,000,000, but he and his corporations were indebted to the extent of approximately $200,000. A mortgage on some or all of the real estate[5] was in default, and the bank which held the mortgage had commenced foreclosure proceedings.

In this situation the plaintiff sought the advice and assistance of the defendant, a practicing attorney experienced in conveyancing and insurance matters who had not previously represented the plaintiff. The defendant analyzed the plaintiff's financial situation and determined that it would be necessary to raise approximately $150,000 in cash in order to relieve the financial pressures on the plaintiff and his two corporations. It was the plaintiff who suggested a trust as the specific vehicle for the rescue of his affairs. The defendant, through his association with another bank, was able to negotiate a loan of $150,000 on the conditions (a) that the loan be secured by a mortgage of the bulk of the plaintiff's properties and (b) that the mortgage note be executed by the defendant individually as well as in his capacity as trustee. The plaintiff agreed that the defendant would be entitled to reasonable compensation for his services in negotiating the new loan, setting up a trust and carrying on the business of the trust after it should be established.

The trust instrument itself was executed on October 8, 1964. It provided, among other things, that the defendant, as trustee, was to carry on any business operations he might deem necessary and that he could borrow money in behalf of the trust and pledge or mortgage the assets of the trust to secure the payment of loans which might be made to the trust. The defendant was expressly authorized "to employ ... agents ... and fix their compensation; to fix reasonable compensation for his own services to the [t]rust ... [and] to represent the [t]rust in all suits and

---

[5] We do not know how the ownership of the mortgaged real estate was distributed as between or among the plaintiff and the two corporations.

legal proceedings relating to the property of the [t]rust." The plaintiff was the sole beneficiary of the trust, and the net income of the trust was to be distributed to him at reasonable times. The trust was to continue for a period of ten years, following which it was to be wound up by the sale of its assets and the distribution of the net proceeds to the plaintiff.

The plaintiff thereupon transferred various of his assets to the defendant, including all the stock of Holliston and Pinecrest, and the defendant entered upon the execution of his duties as trustee. His first actions included mortgaging the bulk of the trust assets (apparently including the real estate owned by both corporations) to secure the new bank loan of $150,000 previously referred to, paying off the old mortgage which was in default, paying real estate taxes, and dissolving real estate attachments.

We turn now to the various items of the defendant's compensation which were objected to by the plaintiff and disallowed by the judge below. It should be understood (a) that the master specifically found that the amount of each charge made by the defendant for the services rendered or provided by him was fair and reasonable, (b) that none of the master's findings in that respect was ever challenged by the plaintiff, and (c) that each of the disputed items was disallowed by the court as matter of law.

1. The first item in dispute is the sum of $1,058.50 which the defendant paid himself out of the proceeds of the $150,000 bank loan as compensation for his services and disbursements in examining the title to the mortgaged real estate in the bank's behalf and preparing the closing papers in connection with the loan.[6] The master specifically found this item to be "a necessary expense properly

---

[6] The parties have eliminated certain obscurities in the record by stipulating before us that this item was paid to the defendant by the trust out of the proceeds of the $150,000 loan. This item was separate and distinct from the amount charged by the defendant (not objected to by the plaintiff) for his services in advising the plaintiff concerning his financial affairs, negotiating the loan, drafting the trust instrument, and drafting the papers by which the plaintiff conveyed his assets to the trust.

chargeable to the [t]rust and that the . . . [defendant] did not profit at the expense of the [t]rust." The master also found that the defendant did not "specifically advise the . . . [plaintiff] that he was also acting for the [b]ank as to the title search and closing aspects of the loan." The plaintiff's objection to this item (explicitly incorporated by reference in the judgment) was on the ground that "profits intentionally derived by the . . . [defendant] from a nondisclosed conflict of interest are impermissible as a matter of public policy and law."

The master's finding that the cost of the title search was "a necessary expense properly chargeable to the [t]rust" was quite consistent with the prevailing practice of mortgage lenders of requiring their borrowers to pay all legal expenses of the type here involved. We construe the finding that the defendant "did not profit at the expense of the trust" to mean that the defendant did not charge the trust more than it would have been required to pay another experienced conveyancer for the same services. The defendant was expected to assume personal liability on the mortgage note, and there was good reason why he would want to satisfy himself as to the state of the title which was to be mortgaged to the bank before he obligated himself on the note (as he did). The plaintiff all but concedes in his brief that there is nothing improper (absent a contrary provision in the trust) in allowing extra compensation to a trustee who is also an attorney for his performance of legal services in behalf of a trust which are necessary and not comprehended within the usual duties of a trustee. See and compare *Turnbull* v. *Pomeroy*, 140 Mass. 117, 118-119 (1885); *Loring* v. *Wise*, 226 Mass. 231, 236 (1917); *O'Riorden, petitioner*, 244 Mass. 472, 476 (1923); Restatement (Second) of Trusts § 242, Comment d (1959); Scott, Trusts § 242.2, at 2117 (3d ed. 1967).

There is nothing in the record to suggest that the defendant concealed his relationship with the bank, the services he performed, or the payment he received. Contrast *Jose* v. *Lyman*, 316 Mass. 271, 278-279 (1944). The trust instrument did not require the defendant to render peri-

odic accounts of his doings as trustee. The payment in question was disclosed in an account voluntarily filed by the defendant in court shortly after the commencement of the present litigation. The disallowance of this item appears to rest on nothing firmer than the master's equivocal finding that the defendant did not "*specifically* advise the . . . [plaintiff] that he was also acting for the [b]ank as to the title search and closing aspects of the loan" (emphasis supplied). We do not think that finding can properly be read as one importing concealment or a conflict of interest; the finding is as consistent with inadvertence on the part of the defendant as it is with a wrongful intent on his part. We are of opinion that the judge erred in disallowing this item.

2. Following the formal establishment of the trust the defendant became the president, the treasurer and a director of both Holliston and Pinecrest. He was required to, and did, devote substantial amounts of time to the management and financial affairs of Pinecrest, which continued to operate the golf course already referred to. He utilized the services of his own office employees in handling and performing the bookkeeping relative to the receipts and disbursements of Pinecrest, including its payroll, taxes, tax returns, and mortgage and insurance payments. The master found or stated that the funds of both corporations "were mingled with [t]rust funds and that no accurate accounting as to the operations of . . . [either corporation] was made. I do not find that there was any misappropriation of the funds [of either corporation] but I do find that the accounting methods were not to be recommended and that a separate accounting should have been made by and as to each corporation and as to the [t]rust." There are also express findings: that "the . . . [defendant] took the position that he was primarily acting as [t]rustee in all matters whether they pertained to [t]rust assets or business of the corporations and that whatever affected the corporations affected the [t]rust"; and that "all profit from the [t]rust or corporations would inure directly or indirectly to the . . . [plaintiff]."

The defendant also rendered legal services to both cor-
porations in defending them in various litigation matters,
including several actions brought against them by the
plaintiff. The master found, and it is not disputed, that
"considerable research was required in preparing and de-
fending these cases" and that the defendant "had an ob-
ligation to defend or retain counsel to defend these actions
despite the fact that the plaintiff was sole beneficiary of
the [t]rust."[7]

The plaintiff objected to, and the judge disallowed,
charges made by the defendant for (a) his legal services
rendered in defending the two corporations, (b) his ser-
vices in managing the affairs of Pinecrest, and (c) the
services of his employees who had attended to the routine
fiscal affairs of Pinecrest. The essential ground of each ob-
jection (also explicitly incorporated by reference in the
judgment) was that all these charges should have been
made to and paid by the corporations rather than the
trust.[8] We disagree with the judge's rulings with respect to
these items.

The plaintiff was the sole income beneficiary of the
trust; he would be the sole distributee of the net proceeds
of the trust when its assets were to be liquidated at the
expiration of ten years. Contrast *Perry* v. *Perry*, 339 Mass.
470, 478-479 (1959). It is clear that the basic objective of
the trust was to rescue the plaintiff's net financial condi-
tion, without regard to the nature of the particular assets
which might be held by the trustee from time to time; the
trust instrument expressly authorized the sale of the stock
of both corporations and the reinvestment of the proceeds
in other assets. It so happened that the trust continued

---

[7] It will be remembered that the defendant was expressly authorized
to "represent the [t]rust in all suits and legal proceedings relating to
the property of the [t]rust."

[8] There is nothing in the record to suggest any overlapping of ser-
vices or charges with respect to any of the items discussed in this part
of our opinion. It does not appear, and it has not been suggested, that
the defendant or any of his employees received a salary or any other
form of compensation from either corporation.

to hold all the stock of both corporations during the period the defendant served as the sole trustee. Contrast *Matter of Corbin,* 101 App. Div. 25, 27 (N.Y. 1905).[9] On analysis, the trust's paying these items resulted in nothing more startling than loans by the trust to the corporations, loans of a type the defendant was authorized to make under the express provisions of the trust.[10] There is nothing to suggest either corporation was incapable of repaying such loans. We think the plaintiff has failed to show any injury to the trust as a whole or himself in particular.

We do not commend the defendant for his failure to segregate the funds of the various constituents of the trust or for his inability to state separate accounts, but we think the judge was wrong in surcharging the defendant with respect to the items considered in this part of our opinion.

3. The plaintiff's final objection, also sustained, was to the defendant's charging the trust $100 for legal services which he had rendered to the plaintiff as an individual, and not as the beneficiary of the trust. The defendant has not argued this point, and we do not consider it.

The judgment appealed from is reversed. The case is remanded for the entry of a new judgment which allows the items considered in parts 1 and 2 of this opinion, which is otherwise consistent with this opinion, and which is consistent with the principles enunciated in *First Natl. Bank v. Brink,* 372 Mass. 257 (1977). Costs of appeal are not to be awarded to either party.

*So ordered.*

---

[9] None of the other New York cases cited by the plaintiff bears any resemblance to the case before us; several of them turn on particular statutory provisions.

[10] The defendant was authorized to "loan money or give credit, with or without security, to individuals, corporations, partnerships or associations, and to loan money on notes, bonds, chattels and collateral and other securities."