ROBERT A. GRIMES, executor, *vs.* PERKINS SCHOOL
FOR THE BLIND.

Middlesex.   March 13, 1986. — June 24, 1986.

Present: KASS, KAPLAN, & FINE, JJ.

*Executor and Administrator,* Accounts, Compensation, Attorney. *Attorney
at Law,* Compensation.

Review of standards to be applied in determining the validity of fees for legal
services rendered to an estate by an attorney who is also the fiduciary
for the estate. [440-442]
On appeal by a charitable corporation from a probate judge's award of a
combined fee of $30,825.67 to one who had performed services for an
estate as executor and attorney, it was held that, in the circumstances,
including the modest size of the estate and the simple and routine nature
of the services performed, the maximum reasonable compensation to be
awarded for the combined services as executor and attorney should be
$20,195. [443-446]

PETITION for probate of a will filed in the Middlesex Division
of the Probate and Family Court Department on March 15,
1983.

Proceedings relating to the executor's first and second ac-
counts, filed on January 10, 1985, were heard by *Arthur G.
Coffey,* J.

*William F. Kehoe* for the defendant.
*Francis C. Lynch* for the plaintiff.

KASS, J.  By any measure, the will of Edwin C. Tykeson
was a simple one, and his estate was a simple one. The will,
as a practical matter, left Tykeson's entire estate to Perkins
School for the Blind in Watertown.[1] That estate, which at
Tykeson's death had a value of $346,000, consisted entirely

---

[1] The sole other disposition by the testator was $200 to the executor, who
was charged with transmitting $100 to each of two persons "in appreciation
of kind accommodation shown me by them regarding telephone messages."

of readily marketable securities (publicly held companies or funds and Federal notes and bonds) and bank deposits. For his services as executor and attorney, Mr. Robert A. Grimes claimed, and was allowed, a combined fee of $30,825.67. We are of opinion that, in the circumstances, the fees were beyond reasonable bounds.

1. *Applicable principles.* It is lawful in Massachusetts to act in a dual role as fiduciary and attorney for an estate. See *Blake* v. *Pegram,* 109 Mass. 541, 553-554 (1872); *Richmond* v. *Wohlberg,* 385 Mass. 290, 296-297 (1982) (special administrator retained law firm of which he was a partner); *Lembo* v. *Casaly,* 5 Mass. App. Ct. 240, 244 (1977). When acting in both capacities, a person may receive compensation for the discrete fiduciary and lawyer functions. *Blake* v. *Pegram, supra* at 553.[2] Particularly in the case of a relatively modest estate, combining the tasks of the fiduciary and the lawyer may be efficient (hence economical) and congenial.

When a lawyer plays the combined part, however, and becomes his own client, the fees charged require the most careful scrutiny. *Blake* v. *Pegram,* 109 Mass. at 553-554. As the court had put it in an earlier chapter of that case: "When the same person is both guardian and trustee, it would be a reproach to the law, and the courts charged with the protection of such trusts, to allow him to charge full compensation in both capacities for the same service." *Blake* v. *Pegram,* 101 Mass. 592, 600 (1869). Conservative criteria are in order, in fairness to beneficiaries who have not hired the lawyer and to avoid an erosion of public respect for the administration of justice. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939). *Hayden* v. *Hayden,* 326 Mass. 587, 596-597 (1950). As we had occasion to observe recently in an analogous context: "When fee awards appear excessive and the public hears what has been called the soft thud of mutual backpatting, respect for the administration of justice must suffer." *Robbins* v.

---

[2] In a majority of States, the rule appears to be that, in the absence of a statute providing otherwise, an executor or an administrator is not entitled to extra compensation for legal services rendered by the fiduciary in connection with the estate. Annot., 65 A.L.R. 2d 809 (1959).

*Robbins,* 19 Mass. App. Ct. 538, 544 (1985). Especially when a deceased person leaves no close relations and the beneficiaries are distant relatives or bloodless institutions, a disciplined appraisal of fair charges is in order to allay suspicion that the estate is being plucked. Cf. *Rhode Island Hosp. Trust Natl. Bank* v. *Burns,* 12 Mass. App. Ct. 251 (1981).

Subject to the steely-eyed attitude we have described as appropriate when both fiduciary's and lawyer's fees are sought by the same person, the factors which a court should take into account in approving fees under G. L. c. 206, § 16, are familiar. As to the executor, they include the size of the estate, the marketable nature of the assets, the factual and legal questions involved in administering the estate, the time reasonably required to do the work, the skill and ability employed, the amounts usually paid others for similar work, and the results accomplished. *McMahon* v. *Krapf,* 323 Mass. 118, 123 (1948). As to an attorney's charges, the factors include the ability and reputation of the lawyer, the demand for services of the lawyer by others, the special skills which may have been brought to bear, the complexity of the case, the size of the case in dollars, the fees usually charged for work of the kind involved, the time spent, and the success achieved. *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933). *King* v. *Grace,* 293 Mass. 244, 251 (1936). *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 576 (1980).

What is a reasonable fee is a question of fact for the trial judge. *McMahon* v. *Krapf,* 323 Mass. at 124. Upon review of an award of an attorney's fee, however, "it is proper to consider whether the judge's determination reasonably has taken into account all appropriate factors. We may also consider whether (because all factors have not been adequately considered) the decision under review reaches a result seriously beyond any reasonable range." *Mulhern* v. *Roach,* 20 Mass. App. Ct. 322, 331, further appellate review granted, 396 Mass. 1101 (1985). See also *Williams* v. *Howard,* 330 Mass. 323, 326 (1953); *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 950 (1st Cir. 1984). Neither the evidence as to what was done nor the findings of fact of the judge are much in dispute. The

subject of controversy is what standards ought to be applied
in setting the ultimate numbers. Resolving that controversy
does not involve second guessing the Probate Court judge;
rather it requires an effort by us to illuminate the criteria that
ought to be taken into account through analytical application
of those criteria to a specific set of facts. *Ibid.*

2. *Facts.* Mr. Grimes had acted as conservator for Mr.
Tykeson for approximately ten years before the latter died.
Marshalling the assets of the estate was not a burdensome task:
it required no more than transferring securities and bank ac-
counts, for which Mr. Grimes already had responsibility, from
a conservatorship account to an executor's account. The se-
curities consisted of ten publicly-traded stocks and three Federal
notes and bonds, all with a ready market. There was no tangible
personal property of consequence to appraise or dispose of,
no real estate, and no life insurance. The tasks required of the
executor in this case were, on the whole, ministerial. A sum-
mary of his exertions as executor which Mr. Grimes prepared
as an exhibit reflects the routine nature of what he needed to
do. We do not belittle the value of routine labor competently
dispatched. Tykeson's estate was not one calculated to catapult
flights of the imagination, and the work of fiduciaries and
lawyers often turns on attendance to the details. Whether com-
plexities were involved is, however, a factor in the analysis
of what is reasonable compensation.

It was, of course, necessary for Mr. Grimes to file tax
returns. Mr. Grimes, fiduciary, turned to Mr. Grimes, attorney,
for advice, and the outcome was transiently unfortunate for
the estate. Failing to consider that amounts payable to charity
were deductible from estate income for Federal and State tax
purposes,[3] Mr. Grimes paid some $13,000 in unwarranted in-
come taxes on behalf of the estate. Perkins School called the
error to attention, and Mr. Grimes applied for refunds which,
in due course, he received.

In his previous incarnation as conservator, Mr. Grimes had
been paying Tykeson's bills (e.g., nursing home charges). Con-

---

[3] See Internal Revenue Code § 642(c) and G. L. c. 62, § 3.

sequently, there were few estates debts to discharge. None required negotiation. As the Probate Court judge found, Mr. Grimes invested the estate's assets and monitored the investments. So he did, but that activity consisted essentially of selling all the equity securities on a single day and reinvesting the proceeds in a money fund.

3. *Peformance as executor.* Laying the particulars of Mr. Grimes' task as executor alongside the criteria enumerated in *McMahon* v. *Krapf,* 323 Mass. at 123, they push our conclusion as to what would be a reasonable executor's fee to the modest end of the scale. The size of the estate was itself relatively modest; the estate assets were singularly marketable and easy to manage; there were no complicated factual or legal questions to contend with (in the case of an individual representative of the estate, we think that finding the heirs at law may be categorized as an attorney's chore); and the skill and ability employed, it is necessary to observe, fell below the average line because of the overpayment of taxes.

The evidence most favorable to Mr. Grimes was the testimony of an expert witness. That witness relied on fee schedules of corporate fiduciaries, notably that of Bank of Boston, which had a charge rate of five percent on the first $100,000; four percent on the next $200,000; and three percent on amounts over $300,000. Applying that schedule, the witness estimated a fee of $14,200 on the capital of the estate. For income earned during the seventeen months the estate was open, the expert thought a charge of seven percent of income appropriate, a calculation which added $3,150, for a total executor's fee of $17,350.

Percentage measures of compensation, as the evidence in this case demonstrated (the fee schedules of three banks were admitted in evidence), exist in the market place. They do not have a foundation in the law of the Commonwealth. To the contrary, *Parker* v. *Hill,* 185 Mass. 14, 15-17 (1904), disapproves compensating fiduciaries on the basis of what it describes, deprecatingly, as a commission basis. Similarly, the court said in *Blake* v. *Pegram,* 101 Mass. at 600, that there "is no rule of law and no principle of right by which such commissions are to be charged or allowed without regard to the rendition of actual services therefor." If a testator or the settlor of a trust has designated a specific corporate fiduciary, there may be a basis for urging an

inference that the corporate fiduciary's fee schedule was known and agreed to. Without evidence, a similar inference is not possible in the case of an individual representative. Percentages are rules of thumb, useful as a guide but not to be mechanically applied without consideration of "the care and thought and intelligence, as well as the manual service, which are given to the performance of his duties." *Parker* v. *Hill,* 185 Mass. at 16.

There was evidence from an expert for Perkins School that corporate fiduciaries performed a larger share of the aggregate labor required of an executor and an attorney, leaving to the attorney legal oversight, the allowance of the will and the filing of court papers. That the work undertaken by a corporate fiduciary is often more inclusive than that performed by an individual fiduciary is reflected in an analysis of lawyers' services in estate cases which appears in Newhall, Settlement of Estates and Fiduciary Law in Massachusetts § 278 (4th ed. 1958 and Supp. 1985, at 53-55). The material is drawn from vintage Massachusetts Bar Association schedules, since withdrawn, but still instructive. What a lawyer for an individual fiduciary is required to do comprehends much of an executor's or administrator's duties. A lawyer acting for a corporate fiduciary is expected to do a great deal less. Because it assumes the performance of a large share of an executor's duties, the fee schedule in Newhall for legal services rendered to an individual fiduciary translates usefully to a lower-gauged rule of thumb which affords some guidance in setting the fee of the individual fiduciary. That fee schedule is five percent on the first $10,000; four percent on the next $40,000; three percent on the next $50,000; and two percent on the amount over $100,000. *Id.* at 54. Applied to the Tykeson estate, that schedule would have produced an executor's fee of $8,520 on the capital of the estate. If the generous factor of seven percent of income (i.e., $3,150) were added to that figure, the sum is remarkably close to the $11,559 which Mr. Grimes charged the estate as an executor's fee.

Levying a seven percent commission on income earned is a striking example of too mechanical a use of a rule of thumb. Sale of the securities was a basic task for the executor, and the reinvestment of the proceeds in a money fund, although pru-

dent, did not require a high order of care, thought, intelligence, or even manual service. Cf. *Parker* v. *Hill,* 185 Mass. at 16-17. Once the securities were sold, the work attendant on managing the assets was custodial. Bonus points would not be available for the acumen with which the executor handled the tax aspects of the income earned. We think the compensation to be allowed to keeping track of the income in this case should not exceed $500. Cf. *Wilson* v. *Askinas,* 325 Mass. 136, 138 (1949).

As we have observed, the undisputed facts pertinent to this estate point to an executor's fee at the lower end of available scales. Taking into account rules of thumb adjusted in accordance with what needed to be done, what was done, and how it was done, consistent with principles we have discussed, we think the record does not warrant an executor's fee in excess of $9,020. That figure is the sum of an application of the lower-gauged rule of thumb for individual fiduciaries, $8,520, plus $500 allocable to the asset management which took place after sale of the equity securities. We emphasize that there may be estates of similar size which, by reason of complexities or particular tasks inherent in them, may be charged a higher executor's fee by an individual representative who combines the role of executor and attorney.

4. *Performance as attorney.* Turning to the duties of Mr. Grimes as attorney, we are prepared to acknowledge as a complicating factor that the heirs of Tykeson (none of them close) who were required to be served with citations lived in Sweden. Some hunting of addresses and sorting out of spelling of Swedish names was required. Other than that, the duties were the usual ones of having the will allowed, notifying interested persons, checking the tax returns, and attending to formalities with the beneficiary. No special skills were brought to bear, the case was not complex, the size of the estate was modest, and there was no particular success achieved. Indeed, Mr. Grimes, as attorney, had to share with his other self, as executor, the awkwardness of the mistakenly paid estate income taxes. While, as we have conceded, being one's own attorney in an estate may be efficient, the dual role is calculated to mask

an error made by the person in one capacity or the other. In view of the undramatic nature of the job accomplished, time charges begin to loom large as an indicator of reasonable compensation.

Such time records as Mr. Grimes offered in evidence[4] do not segregate executor and attorney time. The attorney time claimed by Mr. Grimes in a typewritten recapitulation of work as attorney was 74.5 hours. Ten hours of the total are attributed to estate tax returns, work also mentioned as done in the executor role. We mention that not to cavil, but to illustrate the caution that the executor-attorney and a reviewing court must exercise to avoid charging for the same service twice. Some of the time entries give pause, e.g., two entries of an hour and an hour and a half for trips to the post office and a trip to the Registry of Probate to inquire about the whereabouts of the citation order. We accept 74.5 hours found by the judge to have been spent as attorney's time but when so much humdrum work is involved it is not appropriate supinely to apply Mr. Grimes' top hourly rate of $175. The only range discussed in evidence and found by the judge was $150 to $175 per hour. We do not endorse that rate as necessarily appropriate during 1983 and 1984 (when the services were rendered) for a lawyer who had neither special skill nor experience in the settlement of estates and was not called upon to bring special skill to bear. We accept the range because that is what the judge found to be a reasonable rate and there was evidence to support the finding.

Given the circumstances, however, we have no hesitation in applying the lower end of the range and concluding that the attorney's component of compensation should not exceed 74.5 times $150, or $11,175.

5. *Conclusion.* The record before us is complete and it has been possible for us, by applying the settled standards, to determine what the maximum reasonable compensation should be. See *King* v. *Grace,* 293 Mass. at 251; *Olmstead* v. *Murphy,*

---

[4] It is not clear that the time notes were contemporaneously made. They have earmarks of reconstruction. There is an intriguing notation on the last sheet, "175 into 30,000 = 171.5 hours. So we need 170 or so hours?"

21 Mass. App. Ct. 664, 667 (1986); *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d at 951. For other cases in which a fiduciary's or an attorney's fee was reduced on appeal, see *Bearse* v. *Styler,* 309 Mass. 288, 291 (1941); *McLaughlin* v. *Old Colony Trust Co.,* 313 Mass. 329, 335-337 (1943); *Wilson* v. *Askinas,* 325 Mass. at 138; *Williams* v. *Howard,* 330 Mass. at 326; *Paone* v. *Gerrig,* 362 Mass. 757, 763-764 (1973); *DeSautels, petitioner,* 1 Mass. App. Ct. 787, 794 (1974). The aggregate of the fees we have determined to be the maximum reasonable is $20,195.

When an executor is obliged to defend his accounts and loses, he may be denied recovery of the litigation costs from the estate. Otherwise, the estate will have won a Pyrrhic victory. See *Blake* v. *Pegram,* 109 Mass. at 558; *Urann* v. *Coates,* 117 Mass. 41, 44 (1875). We think there is no point in awarding to Perkins School counsel fees and expert fees from the estate, as Perkins is, in any event, to receive all the residuary estate. We advisedly make no order for an award of counsel fees under G. L. c. 215, § 45.

The judgment allowing the executor's accounts is to be modified to provide that Mr. Grimes may charge the estate of Edwin C. Tykeson a combined fee of $20,195 for his services as executor and attorney. Neither party shall recover counsel fees attendant to this litigation from the estate. The appellant shall have its costs on appeal in the ordinary course.

*So ordered.*